USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________
No. 91-1328 FRANCIS A. WILLHAUCK, JR., ET AL., Plaintiffs, Appellants, v. PAUL HALPIN, ET AL., Defendants, Appellees. ____________ ERRATA SHEET The opinion of this court issued on December 23, 1991, is
amended as follows: Page 27, line 10 - in the full sentence starting with the word
See, delete the comma after "(a)" and substitute therefore an
ampersand. Page 28, line 6 from the bottom - delete the word "the." Page 30, footnote 11, third line - delete the comma after the
word "actions" and substitute therefore a period. Page 30, footnote 11, line 4 - insert a period after "Cir." Page 58, second paragraph - delete the comma on the second
line after the word "appeal." Page 62, line 11 - delete the second "o" in "Bordonaro" and
replace it with an "a" so that "Bordonaro" is spelled as follows: "Bordanaro." Page 71, fifth line from the bottom - delete the word
"section." ____________________
No. 91-1328 FRANCIS A. WILLHAUCK, JR., ET AL., Plaintiffs, Appellants, v. PAUL HALPIN, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. W. Arthur Garrity, Jr., Senior U.S. District Judge] ____________________ Before Torruella, Circuit Judge, Bownes, Senior Circuit Judge, and Tauro,* District Judge. ____________________ Robert C. Hahn with whom Hahn & Matkov was on brief for appellant. John P. Flynn with whom Murphy Hesse, Toomey & Lehane was on brief
for appellees Town of Milton, John Moriarty, Robert Galvin and James
Rogers. Peter M. Coppinger, Assistant Attorney General, with whom Scott
Harshbarger, Attorney General, was on brief for appellees Metropolitan
District Commission, Paul Halpin, John Perry, Donald Callender, Richard
Huffam and J.B. Mills. ____________________ ____________________
________________ *Of the District of Massachusetts, sitting by designation. BOWNES, Senior Circuit Judge. This is an appeal of Augean
dimensions arising from the failure of the plaintiffs to
prevail in a multi-party, multi-claim action under 42 U.S.C. 1983. The plaintiffs in this case are Francis A. Willhauck,
Jr. ("Willhauck") and several of his family members. The
defendants are various police officers in their individual
capacities, the Towns of Milton and Dedham, Norfolk and Suffolk
Counties of Massachusetts, and the Metropolitan District
Commission ("MDC"). Willhauck's 1983 claims arose from a
late-night, high-speed automobile chase through Boston and some
surrounding towns that ended with his arrest and alleged
beating by the police, and from a subsequent late-night
intrusion by police officers into the Willhauck household
several months after the car chase. Willhauck's claims also
relate to the conduct of Norfolk and Suffolk County prosecutors
who brought separate actions against him for offenses committed
on the night of the car chase. The district court dismissed Willhauck's claims against
the Towns of Milton and Dedham, the MDC, and Norfolk and
Suffolk Counties. It also dismissed constitutional challenges
to provisions of Massachusetts law governing the authority of
police officers to order vehicles to stop (Mass. Gen. Laws ch.
90, 25), and the Massachusetts Rule of Criminal Procedure
governing consolidation of cases among separate counties (Mass.
R. Crim. P. 37(b)(2)). Claims against the officers involved in
the late-night intrusion into the Willhauck household were also
dismissed. The case went to trial against the six remaining
defendants, all of whom were police officers involved in the
car chase and alleged beating. The district court granted
directed verdicts for four of the officers, and the jury found
in favor of the two remaining officers. Willhauck appeals the district court's dismissal of his
constitutional challenges to Mass. Gen. Laws ch. 90, 25 and
Mass. R. Crim. P. 37(b)(2). He also attacks the dismissals of
the Town of Milton and MDC. In addition, Willhauck challenges
certain rulings by the district court prior to and during trial
barring argument on several of his theories of constitutional
injury. Neither the directed verdicts nor the jury verdict
have been challenged on appeal. I. FACTS
A. The High Speed Chase The following facts are based on the appendix submitted by
Willhauck in this appeal. Willhauck's saga began on the
evening of July 1, 1979, when he visited a bar in Stoughton,
Massachusetts. There, Willhauck discovered his girlfriend,
with whom he had broken up the day before, in the company of
another man. Willhauck got into an argument with his
girlfriend and her date. The argument continued outside the
bar and developed into a fight between Willhauck and his
girlfriend's companion. During the fight, Willhauck's
antagonist attacked him with a motorcycle chain, hitting him on
the head. Willhauck decided to abandon the fight, although he
testified that the blow from the chain drew no blood. After leaving the lounge in his car, Willhauck decided to
go to his father's house on Brook Road in Milton. At his
father's house, Willhauck called his girlfriend and became
involved in another heated argument. He then decided to visit
his girlfriend at her home in Randolph, and set out in his car
from his father's house in Milton. On the way to see his
girlfriend, however, Willhauck concluded that it was too late
and that he should return to his father's house. He started to
drive back to Milton via Canton Avenue. At about one a.m. that night, Officer John Moriarty of the
Milton Police Department received a radio report in his police
cruiser about a suspicious person in the vicinity of Woodland
Road and Canton Avenue. The report described the suspect as
wearing a green jogging outfit. Officer Moriarty immediately
headed for Woodland Road via Canton Avenue. Moriarty then saw
a pair of taillights moving away from him on Canton Avenue. It
was Willhauck's car. As Moriarty followed the car, it began to
accelerate. Because the car was speeding and because of the
suspicious activity report, Moriarty turned on his blue lights,
anticipating that the car would stop. Moriarty estimated that
both the car and the cruiser were travelling at least fifty
miles per hour at the time he turned on the cruiser's blue
lights. Willhauck had a different recollection of these events. He claimed that he was observing the thirty mile an hour speed
limit at the time he noticed the cruiser's flashing blue lights
in his rear view mirror. Because he felt that he hadn't done
"anything wrong," Willhauck got "mad," and decided to try
"speeding out of there to get away from the police officer." A high speed chase then began, with Willhauck accelerating
along Canton Avenue to speeds which Moriarty estimated to
approach sixty miles an hour. The chase moved to Blue Hills
Parkway in Milton. Willhauck attempted to turn off Blue Hills
Parkway onto Brook Road, where Willhauck's father lived, but
found the exit obstructed by a second Milton police cruiser,
manned by Sergeant Robert Galvin. It appeared to Moriarty that
Willhauck was going to ram Sergeant Galvin's cruiser, which was
parked with its blue lights flashing. Willhauck, however,
continued heading north towards Boston on Blue Hills Parkway,
reaching speeds that Moriarty estimated at eighty-five to
ninety miles an hour. Crossing the line between Milton and the City of Boston,
Willhauck led the Milton police on a chase lasting
approximately twenty to twenty-five minutes through Mattapan
Square, Roslindale, West Roxbury, and Dedham. Both Willhauck
and the police passed through stop lights and intersections at
high speeds. Willhauck ignored the blue lights and sirens of
the pursuing cruisers. Officer Moriarty testified that he saw
Willhauck almost hit several pedestrians in the Mattapan Square
business district, and then again around Wellington Hill
Street. After Moriarty radioed that he was attempting to stop
the car, several MDC cruisers joined the pursuit. Willhauck entered the vicinity of Roslindale Square, where
he side-swiped an MDC cruiser occupied by Officers Paul Halpin
and John Perry. Officer Halpin testified that he reversed his
cruiser in an attempt to get out of Willhauck's way, so that
the resulting impact to the front of his cruiser was not
severe. After this collision, which Officer Moriarty
characterized as "minor," Halpin and Perry pursued Willhauck
southbound on Washington street, and then onto Spring Street,
leading the two Milton cruisers in the chase. On Spring
Street, Halpin pulled his cruiser parallel to Willhauck's car
on the driver's side, with the result that the two cars were
moving alongside each other at the same high speed. Officers
Halpin and Moriarty both testified that at this point Willhauck
attempted a left turn, causing Halpin and Perry's cruiser to
spin out of control to a stop in front of the Veterans
Hospital. Rather than pursue Willhauck's vehicle, Officers Halpin
and Perry decided to drive to a roadblock that had been set up
with the assistance of police cruisers from the Town of Dedham. Driving behind a Dedham cruiser, Halpin entered the
intersection of Oakmere and Laurie Avenues in West Roxbury. There, Halpin saw another Dedham police car and other police
vehicles from the City of Boston, and brought his vehicle to a
stop on Laurie Avenue. Meanwhile, Willhauck was driving along
Laurie Avenue, with the Milton police cruisers following him at
a distance. As he approached the roadblock, Willhauck found
himself surrounded by police cruisers. Willhauck claimed that he pulled over his car to a stop on
the left-hand side of the road, realizing that "this [was] it." According to Willhauck, after he stopped his car the MDC
cruiser suddenly accelerated and rammed the front of his car. Officer Halpin testified that Willhauck's vehicle "came over
the hill and struck [his cruiser] head on." Officer Moriarty
agreed that it was Willhauck who rammed Halpin's cruiser. Willhauck's car was severely damaged. Milton Officers Moriarty
and Galvin arrived after the collision between Willhauck's
vehicle and Officers Halpin and Perry's cruiser. Willhauck testified that after being rammed by Halpin and
Perry's cruiser, he picked himself off the floor of his car and
voluntarily stepped outside, raising his hands when he saw that
the police officers had their guns drawn. He recalled saying
"All right. All right." According to Willhauck, he was hit on
the back of the head a number of times and recalled seeing
Officer Halpin hitting him with his gun on the back of his head
before passing out. Willhauck stated that when he came to in
an ambulance, he asked Halpin why he had hit him, and claims
that Halpin responded that he was "'lucky I didn't kill you.'" To corroborate his story, Willhauck introduced into evidence a
picture which showed a group of officers, including Officers
Moriarty and Halpin, standing around while Willhauck was lying
on the ground. In the picture, in which Willhauck is
apparently unconscious and bleeding from his head, Halpin has
his left foot on Willhauck's buttocks. Officer Moriarty testified that after arriving at the
scene of the collision, he saw police units from the MDC, Town
of Dedham, and the City of Boston. He recalled seeing six or
seven police officers, whom he could not identify, standing by
Willhauck's car door. Willhauck was sitting in his car with
his hands on the wheel. According to Moriarty, a struggle took
place among several of the officers who were trying to pull
Willhauck out of the car. Moriarty, however, did not recall
Willhauck offering any resistance. He insisted that Halpin was
to the rear of the group that removed Willhauck from his car. Moriarty testified that he was jostled to the back of the group
of officers, and could not make out what happened during the
"commotion" arising from the removal of Willhauck from his car. Moriarty further testified that he did not remember having
any physical contact with Willhauck until Willhauck was lying
handcuffed on the ground, naked from the waist up. He recalled
noticing that Willhauck had a head wound consisting of a cut
and lacerations and decided to administer first aid with the
help of Officer Halpin. Moriarty, a trained Emergency Medical
Technician, testified that first aid was necessary to stop
Willhauck's head from bleeding freely. Moriarty stated that
while he and Halpin administered first aid, Willhauck told them
about being hit on the head with a bike chain earlier in the
evening. He testified that Willhauck was not unconscious, but
was instead "thrashing around, bucking, [and] yelling," while
lying down handcuffed on the ground. According to Moriarty,
there was "no excessive physical force by anybody" during
Willhauck's arrest. Willhauck was arrested and booked by the
MDC.
B. State Charges Against Willhauck After the chase, Officer Moriarty contacted the Milton
Police Station to report the MDC's arrest of Willhauck. While
at the MDC station, Moriarty issued citations charging
Willhauck with various offenses. Moriarty's charges, which
were lodged later in the day at the Quincy District Court in
Norfolk County, cited Willhauck's "failure to stop at the
signal of a police officer," "driving so as to endanger,"
"failure to slow for an intersection," and "driving at an
unreasonable speed." The same day, on July 2, 1979, Officers Halpin and Perry
filed additional charges against Willhauck in West Roxbury
District Court in Suffolk County. Willhauck was charged with
"failure to stop at the signal of a police officer," "driving
so as to endanger," and two felony complaints of "assault and
battery with a dangerous weapon, to wit a motor vehicle."
C. The Nighttime Intrusion at the Willhauck Household About six months later, on January 9, 1980, four or five
police cruisers pulled into the yard of Willhauck's father's
house in Milton with their blue lights flashing. Willhauck
claimed that the police contingent consisted of three officers
from the MDC -- Officers Richard Huffam, J. B. Mills, and
Donald Callender -- and two Town of Milton officers -- James
Rogers and an unidentified officer. The officers had a default
warrant for Willhauck's arrest, which had been issued because
of his alleged failure to appear in West Roxbury District Court
as summonsed the previous month. Willhauck alleged in his complaint that the officers
"pounded on the door, demanded entry, woke up and upset the
entire household . . . and attempted to arrest Willhauck
. . . ." Members of the Willhauck household present at the
time of the officers' entry included Willhauck, his father
Francis A. Willhauck, Sr., his mother Beryl, and his brother
and sister James and Rosemary Willhauck. Willhauck Sr. called
his son's attorney. When Willhauck's lawyer tried to speak
with the officers, they apparently hung up on him. Later, the
lawyer was able to contact the MDC Night Commander, and
convinced him that the warrant had been erroneously issued. Subsequently, the Night Commander ordered the MDC Officers to
return to their station. The officers left without arresting
Willhauck. Willhauck alleged that the Clerk's Office of the
West Roxbury District Court vacated the default warrant after
determining that it had been erroneously issued. II. PROCEDURAL HISTORY Because of the complicated procedural history underlying
Willhauck's claims in the instant 1983 action, and the fact
that the state prosecutions arising from the car chase comprise
part of the actions complained of, it is necessary to describe
in detail the prior history of this case.
A. Related Litigation Underlying Willhauck's 1983 Action
1. The State Law Charges Against Willhauck Later in January of 1980, Willhauck's attorneys attempted
to consolidate the charges for the various vehicular offenses
pending in West Roxbury District Court in Suffolk County and in
Quincy District Court in Norfolk County. Rule 37 of the
Massachusetts Rules of Criminal Procedure permits a trial court
to order the consolidation of charges pending in different
counties of the Commonwealth provided the parties obtain "the
written approval of the prosecuting attorney in each . . .
county . . . ." Mass. R. Crim. P. 37(b)(2). Willhauck,
however, was unable to obtain the consent of the prosecuting
attorneys in Norfolk and Suffolk Counties to consolidation. In
March of 1980, the West Roxbury District Court found probable
cause to support Officers Halpin and Perry's charges of assault
and battery with an automobile, and bound the case over to
Suffolk Superior Court on the felony charge. Alleging that the refusal of the prosecuting attorneys to
consolidate was based on parochial reasons that were
"prejudicial to him, to the Commonwealth and to justice,"
Willhauck moved for consolidation of the pending Quincy
District Court action in Suffolk Superior Court. The Superior
Court denied a motion for transfer and joinder on May 28, 1980. Four days later, Willhauck petitioned the Massachusetts Supreme
Judicial Court for review of the denial of his consolidation
motion. A single justice declined to order consolidation of
the charges for trial. See Willhauck v. Commonwealth, No. 80-
217 Civ. (Mass. June 3, 1980). 2. Willhauck's First 1983 Action Following his failure to obtain consolidation of the state
charges in the Massachusetts courts, Willhauck brought a 1983
action in the District Court for the District of Massachusetts
on August 1, 1980. Contending that the consent requirement of
Rule 37(b)(2) gave prosecuting attorneys a veto over transfer
and consolidation, Willhauck sought a declaration that the rule
violated the Double Jeopardy and Due Process Clauses of the
Constitution. See Willhauck v. Flanagan, No. 80-1733-G (D.
Mass filed Aug. 1, 1980). Willhauck sought to enjoin the
criminal prosecutions against him in the two county courts. The district court, invoking the Younger abstention doctrine,
declined to issue a TRO. Willhauck then moved in this court
for a stay of the district court's denial of the TRO. We
denied this motion on August 13, 1980. See Willhauck v.
Flanagan, 448 U.S. 1323, 1324-25 (1980). Willhauck next applied to Justice Brennan, in his capacity
as Circuit Justice, for a stay pending appeal to this court of
the district court's order denying the TRO. See id. at 1325. Justice Brennan noted that Willhauck had "a potentially
substantial double jeopardy claim, if not on the face of the
Massachusetts Rule or as applied to him, then simply on the
possibility the State may conduct simultaneous prosecutions
against him in two separate courts on the same offenses." Id. Justice Brennan declined, however, to grant Willhauck a stay on
the grounds that his application was premature, since jeopardy
had not attached in either of the cases. Id.
3. Resolution of the State Charges and Double Jeopardy Claim After Justice Brennan's denial of a stay, the case against
Willhauck in Suffolk Superior Court proceeded. In October,
1980, a Suffolk jury acquitted Willhauck on the two assault
charges, but convicted him on the two misdemeanor charges:
failure to stop for a police officer and driving so as to
endanger. The court imposed a suspended sentence, probation,
and a fine. At the same time, Willhauck's case in Quincy
District Court in Norfolk County was transferred for trial to
Dedham District Court in the same county. There, before trial,
Willhauck moved to dismiss raising, inter alia, double jeopardy
as a bar to a second prosecution. In February, 1981, the
Dedham court denied the motion for dismissal. Willhauck again petitioned a single justice of the
Massachusetts Supreme Judicial Court for relief, seeking a stay
of trial in Dedham pending a full bench hearing by the Supreme
Judicial Court of his motion to dismiss. See Willhauck v.
Massachusetts, No. 81-49 Civ. (Mass. March 26, 1981). Noting
that the traffic violations charged in the Dedham case might,
for sentencing purposes, prove to be lesser included offenses
of the misdemeanor charges for which Willhauck had already been
sentenced in Suffolk Superior Court, Justice Wilkins remanded
the case to the Dedham District Court for reconsideration. On
remand, the district court concluded that to try Willhauck for
driving offenses in Norfolk County would require proof of the
same facts underlying his Suffolk Superior Court convictions. See Further Ruling on Defendant's Motion to Dismiss,
Massachusetts v. Willhauck, No. 2872 Crim. (District Court
Dept., Dedham Division, May 27, 1981). The Norfolk County
charges were, therefore, dismissed. Following the entry of final judgment in the Dedham
District Court on July 9, 1981, Willhauck filed a consolidated
appeal from the actions in both Norfolk (the Dedham dismissal)
and Suffolk (the Suffolk Superior Court convictions) Counties,
which was lodged with the clerk in each county. Willhauck's
appeal was accepted by the Norfolk County clerk, but rejected
as to the Suffolk Superior Court convictions, on the grounds
that the appeal was untimely. Suffolk's clerk stated that
Willhauck's "joint" appeal was "not in compliance with Mass.
Appellate Rules." There do not appear to have been other
filings in these state proceedings.
B. Willhauck's Current 1983 Claim
1. The Claims in District Court Three years after the night of the car chase, on July 1,
1982, Willhauck and his family filed this 1983 action in the
District Court for the District of Massachusetts against
sixteen individual and municipal defendants. Willhauck's
complaint, as amended, sought declaratory relief, damages and
attorneys fees on the basis of civil rights claims arising from
1) the car chase and alleged beating; 2) the nighttime
intrusion into the Willhauck household; and 3) the subsequent
state law prosecution of Willhauck in Suffolk and Norfolk
Counties. As to each of these episodes, Willhauck alleged
violations of his federal and Massachusetts constitutional
rights, as well as supplemental state law tort claims. In his claims relating to the car chase, Willhauck charged
all the officers involved with, inter alia, an
"unconstitutional attempt to stop, unlawful chase, unlawful
destruction of property, unlawful arrest, police brutality,
false imprisonment, malicious prosecution . . . [and]
conspiracy to obstruct justice and to deprive civil rights." The officers involved in the car chase from the Town of Milton
(Officer Moriarty and Sergeant Galvin), Town of Dedham
(Officers Belmonte, Dietenhofer and Tapsel), and MDC (Officers
Halpin, Perry, and Callender), were sued in their individual
capacities. In addition, Willhauck charged the Town of Milton,
Town of Dedham, and the MDC with "negligent training and/or
lack of supervision of their police force" resulting in
Willhauck's alleged beating, and with allowing their officers,
"pursuant to custom, policy and practice . . . , [to] allow
their police officers to stop motorists without cause." He
also alleged a "custom, policy and practice" of allowing these
police officers to "engage in high speed chases including
running red lights and stop signs" in violation of
Massachusetts law. Willhauck and members of his father's household brought
other claims in relation to the nighttime intrusion of January
1980. This portion of Willhauck's complaint centered on the
officers' "unwarranted intrusion into [the Willhauck] home,
[and] intentional infliction of emotional distress . . . ." A
different group of officers were named as defendants to these
claims: Officers Huffam, Mills and Callender of the MDC, and
Officer Rogers of the Milton Police. The Town of Milton and
the MDC were cited for their "custom, policy and practice" of
allowing nighttime service of arrest warrants, a practice that
Willhauck claimed violated the Fourth Amendment. The balance of the claims in Willhauck's complaint relate
to alleged civil rights violations and state law torts stemming
from Willhauck's separate prosecutions in Norfolk and Suffolk
Counties. This part of the complaint identifies these counties
as additional defendants. Willhauck alleged that the
unwillingness of prosecutors in each county to assent to
consolidation of the charges against him under Mass. R. Crim.
P. 37(b)(2) violated his constitutional rights because this
refusal was an "unlawful harassment." Along with his claims for damages under 1983, Willhauck
requested declaratory relief. He asked the district court to
declare Mass. R. Crim. P. 37(b)(2) unconstitutional, on the
grounds that it permitted piecemeal prosecutions in violation
of the Supremacy and Double Jeopardy Clauses, and the Fifth,
Sixth and Fourteenth Amendments. Willhauck also challenged
the constitutionality of the "stop provision" of Massachusetts
state law under which Willhauck was charged for his "failure to
stop at the signal of a police officer" in both the Norfolk and
Suffolk County prosecutions. This provision, which is entitled
"Refusal to submit to police officer," makes it an offense for
a person operating a motor vehicle to refuse to stop when
signalled to stop by a police officer. See Mass. Gen. Laws
Ann. ch. 90, 25 (West 1991). Willhauck claimed that section
25 gave "police officers the power to stop motor vehicles
without reasonable cause" in violation of the Supremacy Clause
and Fourth and Fourteenth Amendments. Willhauck further
alleged that the "exercise of [this] stop power" under section
25 by the Town of Milton, MDC, and Officers Moriarty and Halpin
violated his constitutional rights. Finally, Willhauck alleged that the refusal of the Suffolk
County clerk to forward his appeal of his state law misdemeanor
conviction on grounds of untimeliness was illustrative of a
custom and practice of the county system of Massachusetts
government to permit clerks to devise independent and
inconsistent appellate procedural rules. This inconsistency in
the application of the rules by county clerks, Willhauck
alleged, violated criminal defendants' rights under the
Supremacy Clause and Sixth and Fourteenth Amendments. Naming
Suffolk County as defendant, Willhauck alleged that the refusal
of the Suffolk clerk to accept his joint appeal after the
dismissal of Willhauck's parallel Dedham case was an "unlawful
harassment" redressable under 1983. 2. Resolution of Willhauck's Claims in District Court All of the defendants in this action filed motions to
dismiss in response to Willhauck's complaint and amended
complaint. The district court quickly granted the Town of
Dedham's dismissal motion, in September of 1982. Two years
later, on August 27, 1984, the district court dismissed
Willhauck's constitutional challenges to Mass. R. Crim. P.
37(b)(2) and Mass. Gen. L. ch. 90, 25, reasoning that neither
claim established a valid claim of constitutional deprivation
for purposes of a 1983 action. On the same day, the district
court also granted the MDC's motion to dismiss, holding that
the MDC was immune from suit under the Eleventh Amendment. Several months later, on December 12, 1984, the district
court granted the Town of Milton's motion to dismiss. See
Willhauck v. Halpin, 599 F. Supp. 282 (D. Mass 1984). The
district court rejected all of Willhauck's theories of
municipal liability based on constitutional deprivations
allegedly occurring during the car chase and later nighttime
intrusion. Id. at 283. Ten months later, the district court disposed of another
group of defendants in the case. On October 18, 1985, after a
hearing, the court granted the motions for dismissal by the
three MDC police officers involved in the nighttime intrusion
into the Willhauck household: Officers Callender, Huffam and
Mills. The Milton officer involved in the nighttime intrusion,
Officer Rogers, prevailed on a motion for summary judgment. Although it is not entirely clear from the record, Norfolk and
Suffolk Counties appear to have been dismissed as defendants on
the grounds that the claims against them had been "mooted" by
the dismissal of the municipal defendants and of the MDC. Thus, by the time of trial in August of 1987, only six of
the original defendants remained as defendants in the action,
all of whom were police officers involved in the car chase and
alleged beating of Willhauck -- MDC Officers Halpin and Perry,
Town of Milton Officers Moriarty and Galvin, and Town of Dedham
Officers Dietenhofer and Tapsel. The docket also indicates
that all of the Willhauck family members involved in the
nighttime intrusion were no longer listed as plaintiffs in the
action, presumably as a result of the court's dismissal of all
the defendants involved in that occurrence. At the close of Willhauck's evidence, the district court
directed verdicts in favor of Town of Milton Officers Moriarty
and Galvin and Town of Dedham Officers Dietenhofer and Tapsel. Willhauck's case continued against the two remaining
defendants, MDC Officers Halpin and Perry. The jury returned
a verdict in their favor.
3. Willhauck's Earlier Appeals of the District Court's Actions Immediately after the verdict in favor of the defendants,
Willhauck moved for a judgment notwithstanding the verdict, and
in the alternative for a new trial. A day before the district
court responded to this motion, Willhauck filed a Notice of
Appeal to this court of the denial of the motion. Although the
district court did ultimately deny the motion, we dismissed the
appeal because of Willhauck's failure to file his notice of
appeal in the manner specified by Fed. R. App. P. 3(a) and
4(a)(4). At this point, in November of 1988, Willhauck sought by
motion to have the district court issue an "Entry of Judgment
on Certain Issues and Parties." In February of 1989, the
district court denied this motion, and also denied Willhauck's
motion for reconsideration. On March 3, 1989, Willhauck appealed the district court's
refusal to grant his motion of an entry of judgment. After
reviewing the record, we determined that the district court's
pretrial and directed verdict dismissals failed to satisfy the
requirement of Fed. R. Civ. P. 58 that a "separate document" be
entered in order to finalize an entry of judgment. See
Willhauck v. Halpin, 919 F.2d 788, 793-94 (1st Cir. 1990). We
also found that these dismissals did not satisfy the
requirement of Fed. R. Civ. P. 79(a) that judgments be entered
in the district court's docket with a description of the
"substance of each order or judgment of the court." Id. We
concluded that except as to Officers Halpin and Perry, the
district court had failed under Rules 58 and 79 to enter
properly its judgments as to the other fourteen defendants. Lacking any indication that any of these rulings had been
certified for immediate review under Fed. R. Civ. P. 54(b), we
concluded that the time for appeal of the district court's
rulings would not begin to run until the district court
corrected its Rule 58 and 79 errors. Id. at 793-94. We
vacated the district court's denial of Willhauck's motion for
entry of judgment and remanded. After our ruling, the district court held a hearing on
Willhauck's motion for entry of judgment. On February 25,
1991, the court entered judgments dismissing the Willhaucks'
action against the civic entities (Milton, Dedham, and the
MDC); MDC Officers Callender, Huffam, and Mills; Dedham
Officers Dietenhofer, Tapsel, and Belmonte; and Milton Officers
Moriarty, Galvin and Rogers. On March 16, 1991, additional
judgments were entered dismissing the action against Norfolk
and Suffolk Counties. On April 19, 1991, Willhauck filed the
appeal now before this court as to the merits of his 1983
action. His Notice of Appeal attached entries of judgment
covering all of the sixteen defendants named in his complaint. III. THE ISSUES ON APPEAL In order to establish precisely which issues are now
before us on appeal, we quote in its entirety Willhauck's
"Statement of Issues" from his brief: 1. Did the district court err by holding that [Mass. Gen. Laws] ch. 90, sec. 25 authorized unlawful motor vehicle stops? 2. Did the district court err by holding that [Mass. Gen. Laws] ch. 90, sec. 25 authorizes motor vehicle stops by bluelighting? 3. Did the district court err by refusing to recognize that [Mass. Gen. Laws] ch. 90, sec. 25 authorizes motor vehicle stops in rudimentary traffic control situations only? 4. Did the district court err by preventing Willhauck [] from showing lack of reasonable suspicion to attempt to stop him in the first instance? 5. Did the district court err by preventing Willhauck [] from showing his right to resist the unlawful attempt to stop him? 6. Did the district court err by preventing Willhauck [] from putting into evidence [Mass. Gen. Laws] ch. 89, sec. 7B and the MDC and Milton motorized pursuit policies? 7. Did the district court err by dismissing the MDC and Town of Milton? 8. Did the district court err by dismissing plaintiff's nighttime intrusion claim? 9. Did the district court err by dismissing Willhauck[]'s constitutional challenge to [Mass. R. Crim. P.] 37(b)(2)?
Brief for Appellants at 1. Besides noting the issues that Willhauck has raised on
appeal, we also identify the issues that he has chosen not to
appeal. We do so in order to comply with our settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. . . . It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . . "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation' to spell out its arguments squarely and distinctly,' or else forever hold its peace."
United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert.
denied, 110 S. Ct. 1814 (1990) (citations omitted). See also
Ramos v. Roche Products, Inc., 936 F.2d 43, 51 (1st Cir.),
cert. denied, ___ U.S. ___, 60 U.S.L.W. 3342 (1991) (brief must
contain full statement of issues presented and accompanying
arguments); Continental Casualty Co. v. Canadian Universal Ins.
Co., 924 F.2d 370, 375 (1st Cir. 1991) (mere mention, without
supporting argumentation, that party seeks review of a district
court's ruling insufficient to raise issue on appeal); Brown v.
Trustees of Boston University, 891 F.2d 337, 353 (1st Cir.
1989) (same). As a threshold matter, then, we state the rulings and
findings that Willhauck has waived through his failure to
present them in his brief. Willhauck has waived appeal of the
jury's August 1987 verdict in favor of MDC officers Halpin and
Perry on the issue of liability for the alleged beating. He
has waived appeal of the district court's directed verdicts at
the close of plaintiff's evidence in favor of the Milton and
Dedham officers involved in the car chase -- Officers Moriarty,
Galvin, Dietenhofer and Tapsel. He has waived appeal of the
October 1985 dismissals of the Milton and MDC officers involved
in the alleged nighttime intrusion -- Officers Rogers,
Callender, Huffam and Mills. In addition, Willhauck has waived
appeal of the dismissal of Norfolk and Suffolk Counties. The
issues that Willhauck has decided to place before us for review
can be grouped into the following general categories: A) the
district court's rulings on the validity of his constitutional
challenge to the operation of the section 25 "stop provision"
(Issues 1, 2 & 3); B) the district court's rulings on his
constitutional challenges to the operation of Mass. R. Crim. P.
37(b)(2) (Issue 9); C) the court's dismissal of the MDC and
Town of Milton as defendants, along with Willhauck's underlying
theories of municipal liability (Issues 7 & 8); and D) various
other rulings by the district court both prior to and during
trial preventing argument by Willhauck of alternative claims of
deprivations of his constitutional rights (Issues 4, 5, 6 &
8). IV. JURISDICTION Before turning to the merits of Willhauck's claims, it is
necessary to address the contention raised by the defendants-
appellees MDC and its officers that Willhauck's appeal is
untimely as to certain defendants in this action. The MDC and
its officers first claim that final judgments were entered by
the district court on February 25, 1991, as to all the
defendants dismissed prior to and during trial except Norfolk
and Suffolk Counties, as to which final judgments were entered
on March 16, 1991. Because Willhauck and his family did not
file their notice of appeal until April 10, 1991, the MDC and
its officers argue that their appeal of the February 24th
judgments is untimely since it exceeded by fourteen days the
thirty-day deadline imposed by the Federal Rules of Appellate
Procedure in civil cases. See Fed. R. App. P. 3(a)& 4(a). The
MDC and its officers also argue that judgment as to Officers
Halpin and Perry was entered by the district court after the
jury's verdict in August of 1987. The MDC's contention here is
that Willhauck's appeal is four years too late. This court may only entertain appeals of "final
decisions." See 28 U.S.C. 1291. Whether a district court's
entry of judgment as to a particular defendant or claim is
"final" for purposes of appeal in a multi-defendant or multi-
claim action is governed by Federal Rule 54(b), which provides
in pertinent part: [W]hen multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order . . . which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and all the rights and liabilities of all the parties.
Fed. R. Civ. P. 54(b). The overall purpose of Rule 54(b) is to
create an exception to the longstanding prudential policy
against piecemeal appeals -- and to permit district courts to
determine that parties should, in certain circumstances, be
exempted from the burden of awaiting the final outcome of a
multi-party or multi-claim case. See, e.g., Curtiss-Wright
Corp. v. General Electric Co., 446 U.S. 1, 8 (1980);
Consolidated Rail Corp. v. Fore River Ry. Co., 861 F.2d 322,
324-25 (1st Cir. 1988); Spiegel v. Trustees of Tufts College,
843 F.2d 38, 42-43 (1st Cir. 1988); Pahlavi v. Palandjian, 744
F.2d 902, 903-904 (1st Cir. 1984). In order for a district court's resolution of a particular
claim to qualify under Rule 54(b) as a separate, final judgment
that may be appealed prior to the resolution of the case as a
whole, a two-step process must be followed by the court. First, the court must make an "express direction for the entry
of judgment" in conformity with the Fed. R. Civ. P. 58 and
79(a), which require that the judgment be set forth as a
separate document and that a corresponding entry be made in the
court's docket. See 6 J. Moore et al., Moore's Federal
Practice 54.41[1] (2d ed. 1991). Next, it must appear that
the court has made an "express determination that there is no
just reason for delay." By meeting these two requirements, the
district court "certifies" an otherwise unappealable judgment
for appeal to the circuit court. Id. Willhauck takes the position that prior to the district
court's entry of judgment on March 16th for Suffolk and Norfolk
Counties, this action was not completely finalized for purposes
of appeal. He argues that the judgments entered by the court
on February 25th and in August of 1987 could not have been
truly "final" judgments unless they were certified by the
district court in conformity with Rule 54(b). Because the
district court did not in either case provide an "express
determination that there [was] no just cause for delay" of
appeal of the February 25th and August 1987 judgments,
Willhauck maintains that neither of these judgments were
properly certified under 54(b). According to Willhauck, the
thirty-day deadline for appeal could not have begin to run on
any of the judgments entered by the district court until
judgments were entered on March 16th as to the last remaining
defendants in the case -- Norfolk and Suffolk Counties. We do not think that the district court intended to
certify its judgments of August of 1987 and February 25th as
Rule 54(b) final judgments pending the outcome of the rest of
the litigation. The August 1987 judgment for Officers Halpin
and Perry, entered after their jury trial, merely provides that
"[i]n accordance with the verdict of the jury . . . it is
ORDERED: that judgments for the defendants Paul Halpin and
John Perry, be, and is hereby, entered." As for the series
of judgments entered on February 25th, it appears that the
district court's objective was merely to correct its earlier
failure, pointed out by this court, to observe the Rule 58 and
79(a) requirements that judgments be entered on a separate
document and properly entered in the docket. The February 25th
judgments, like that of August 1987, made no Rule 54(b)
"express determination that there is no just reason for delay." In the absence of any statement of the district court's
intentions to this effect, we agree with Willhauck and hold
that these judgments were not entered in conformity with Rule
54(b). The judgments of August 1987 and February 25th were
therefore orders that merely "adjudicated fewer than all the
claims or the rights and liabilities of fewer than all the
parties." Consequently, this case was not ripe for review
until the March 16th judgments were properly entered. Such a result is in conformity with earlier decisions of
this court construing the Federal Rules on judgments "fairly
strictly," in order to avoid needless uncertainty as to the
date of entry of judgment and the running of the time for
appeal. See, e.g., Willhauck v. Halpin, 919 F.2d at 793
(citing United States v. Indrelunas, 411 U.S. 216 (1973)). While it is apparent that it was the intention of the district
court on February 25th to resolve all outstanding procedural
defects in its earlier judgments, we do not think it reasonable
to make Willhauck bear the burden of the court's failure to
carry out that task properly. To rule otherwise would be to
encourage piecemeal and redundant appeals that the procedural
requirements of Rule 54(b) are expressly designed to prevent. We are satisfied that Willhauck's appeal of the February 25th
judgments is properly before us, and that this appeal was
timely in the aftermath of the court's March 16th judgments
that finally concluded this case as to all the defendants. It is unnecessary for us to address the question of
whether the August 1987 judgment entered in favor of MDC
Officers Halpin and Perry was appealed in a timely fashion. Willhauck has not presented as an issue in this appeal any
challenge to the jury's verdict finding of no liability against
Halpin and Perry. The issue of whether an appeal of that verdict was untimely is therefore moot. V. DISCUSSION
A. Constitutionality of the Massachusetts "Stop Provision" Willhauck's first set of arguments (Issues 1, 2 & 3 on
appeal) advance the general proposition that Massachusetts's
"stop provision" is unconstitutional because it authorizes the
police to stop motor vehicles without reasonable suspicion. The "stop provision" provides in pertinent part that: [a]ny person who, while operating . . . a motor vehicle, shall refuse, when requested by a police officer, to give his name . . . or who shall refuse or neglect to stop when signalled to stop by any police officer who is in uniform or who displays his badge conspicuously on the outside of his outer coat or garment . . . shall be punished by a fine . . . .
Mass. Gen. Laws Ann. ch. 90, 25 (West 1991). Willhauck
points out that section 25 was drafted prior to the Supreme
Court's cases requiring reasonable suspicion for automobile
stops. He contends that the Massachusetts police use section
25 "at will" to carry out "unlawful" motor vehicle stops. Willhauck maintains that section 25 is both unconstitutional on
its face and as applied to him during the attempts of Milton
and MDC officers to stop him on the night of the chase. Intermeshed with Willhauck's constitutional argument is a
separate challenge to the propriety of the charges filed
against him in both Norfolk and Suffolk Counties. Willhauck
contends that Officers Moriarty and Halpin were without
authority to stop him under the terms of section 25 itself,
since Willhauck could not see that either officer was "in
uniform." Furthermore, Willhauck claims, he was not obliged to
stop for Moriarty and Halpin because they did not "display[]
[their] badge[s] conspicuously" when they signalled Willhauck
to stop with their blue lights and sirens. In sum, Willhauck's
argument seems to be that Massachusetts police officers in
general, and Officers Halpin and Moriarty in particular, lacked
authority to attempt to stop him under section 25, and that the
exercise of that authority violated the Fourth Amendment. Taking Willhauck's arguments as an appeal of the district
court's August 1984 dismissal of Willhauck's constitutional
challenge to section 25, we review the district court's ruling
de novo. See Kale v. Combined Ins. Co., 924 F.2d 1161, 1165
(1st. Cir), cert. denied, 112 S. Ct. 69 (1991). In considering
Willhauck's facial challenge to section 25, the district court
determined that the provision did not authorize stops that
would be otherwise unconstitutional, but merely proscribed
certain conduct by motor vehicle operators in Massachusetts. A facial challenge under 1983 was inappropriate, the court
reasoned, because it required the court to assume that all
persons convicted under section 25 had been subjected to an
illegal stop. It therefore dismissed Willhauck's facial
challenge, noting that "as is the case with habeas corpus, a 1983 suit challenging a criminal conviction is a peculiarly
unsatisfactory means for attacking a statute on the grounds of
facial unconstitutionality." The court was careful to reserve
the issue of whether Milton Officer Moriarty had reasonable
suspicion to stop Willhauck. Section 1983 provides a federal remedy, cognizable in
federal court, against state officials for conduct that
violates federal rights, even if these officials' conduct is
wholly unauthorized under state law. See Monroe v. Pape, 365
U.S. 167 (1961); see also H. Hart & H. Wechsler, The Federal
Courts and the Federal System 1240 (3d ed. 1988). To bring an
action under 1983, a plaintiff must show both the existence
of a federal constitutional or statutory right, and some
deprivation of these federal rights as a result of official
action. See generally Golden State Transit Corp. v. Los
Angeles, 493 U.S. 103, 105-108 (1989); Parratt v. Taylor, 451
U.S. 527, 535-36 (1981). The focus in a 1983 inquiry, then,
is on the existence of official conduct alleged to have
resulted in a deprivation of the plaintiff's federal rights. To state a proper 1983 claim, Willhauck needed to allege
violations of his federal rights resulting from the conduct of
the police officers involved in the car chase. Willhauck did
so in his complaint to the extent that he alleged a violation
of his Fourth and Fourteenth Amendment rights to be free from
unreasonable seizures. The issue for 1983 purposes was
therefore whether any seizure of Willhauck occurred on the
night of the car chase, and whether that seizure was
reasonable. Much of Willhauck's facial challenge to the
constitutionality of section 25, however, does not relate to
the issues material to a Fourth Amendment-based 1983 claim --
i.e., whether the officers actually stopped Willhauck's vehicle
without reasonable suspicion. Instead, Willhauck's argument
appears to be an attempt to attack the lawfulness of his 1980
conviction under section 25 in the Suffolk County proceedings
initiated by MDC Officer Halpin. In addition, Willhauck's
arguments as to whether he was able to see the badges and the
uniforms of the officers attempting to stop him is a further
attempt at a collateral attack on the legality of both state
prosecutions against him. While it is not entirely clear from the appendix submitted
to us, it appears that Willhauck may have challenged the
constitutionality of section 25 in the course of the county
prosecutions brought against him for his failure to stop. In
the Suffolk County prosecution initiated by MDC Officers Halpin
and Perry, Willhauck's brief states that following his failure
to obtain consolidation of the Norfolk County prosecution, "the
trial judge denied all motions to dismiss, to suppress and for
directed verdict." Brief for Appellants at 9. Subsequently,
after a jury trial, Willhauck was found guilty of a violation
of section 25. We also note that in the Norfolk County
prosecution that followed the Suffolk County verdict, Willhauck
supplemented his motion to dismiss on double jeopardy grounds
with the claim that section 25 was unconstitutional. Although
the Dedham District Court rejected the section 25 claim, it
ultimately granted the motion to dismiss on double jeopardy
grounds. We affirm the district court's dismissal of Willhauck's
facial challenge to section 25, but on different grounds than
those adverted to by the district court in its comments
regarding the "unsatisfactory" nature of the 1983 remedy for
a challenge to a statute underlying a prior state court
conviction. In reviewing the district court's dismissal of
a claim, we may, of course, affirm on any independently
sufficient ground. See Medina-Munoz v. R.J. Reynolds Tobacco
Co., 896 F.2d 5, 7 (1st Cir. 1990); Chongris v. Board of
Appeals, 811 F.2d 36, 37 n.1 (1st Cir.), cert. denied, 483 U.S.
1021 (1987). This is especially so where our review is de
novo. In this case, we think it apparent that Willhauck's
arguments concerning section 25, to the extent that they were
material to his claims of denial of his constitutional rights,
had already been adjudicated in the Massachusetts courts prior
to his federal action. Willhauck's section 25 arguments in
this 1983 action were an attempt to relitigate constitutional
issues previously addressed by the Massachusetts court in his
state prosecutions. In rearguing these claims, Willhauck
transgressed the federalism principles expressly applicable to 1983 actions under the doctrine of issue and claim
preclusion. It is well established that a federal court in a 1983
action must give full preclusive effect to state court
judgments adjudicating both issues and claims. See Arecibo
Radio Corp. v. Puerto Rico, 825 F.2d 589, 591-92 (1st Cir.
1987). See also Cuesnongle v. Ramos, 835 F.2d 1486, 1497 n.8
(1st Cir. 1987); Cinelli v. City of Revere, 820 F.2d 474, 479
(1st Cir. 1987) (citing Allen v. McCurry, 449 U.S. 90 (1980));
Isaac v. Schwartz, 706 F.2d 15, 16 (1st Cir. 1983). The
Supreme Court has held that under the federal full faith and
credit statute, federal courts in 1983 actions must
accord the same preclusive effect to state court judgments --
both as to claims and issues previously adjudicated -- as would
be given in the state court system in which the federal court
sits. Migra v. Warren City School Dist. Bd. of Education, 465
U.S. 75, 83-84 (1984). The Court has rejected the notion that
in the 1983 context, "distrust of state courts . . . would
justify a limitation on the preclusive effect of state
judgments," and has instead stressed the need to accommodate
"notions of comity, [and to] . . . prevent vexatious
litigation." Migra, 465 U.S. at 84. Federal courts must
therefore look to state law to determine whether a party to a 1983 action will be barred from relitigating an issue
previously presented in state court (issue preclusion), or from
raising a claim that could have been presented in the state
proceeding (claim preclusion). Id. Under Massachusetts claim preclusion doctrine, a "prior
adjudication on the merits operates as a bar to a later
proceeding upon the same cause of action as to every issue that
in fact was or in law might have been adjudicated." Ratner v.
Rockwood Sprinkler Co., 340 Mass. 773, 166 N.E.2d 694, 696
(1960). See also Mackintosh v. Chambers, 285 Mass. 594, 190
N.E. 38, 39 (1934); Boyd v. Jamaica Plain Co-Operative Bank, 7
Mass. App. Ct. 53, 386 N.E.2d 775, 781 (1979). This court
recognized earlier that "Massachusetts courts apply [claim
preclusion doctrine] in a perfectly traditional manner . . . to
prevent[] the relitigation of issues that 'were or could have
been dealt with in an earlier litigation.'" Isaac, 706 F.2d at
16 (citations omitted). Massachusetts courts also apply the
doctrine of issue preclusion in a traditional manner: When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.
Martin v. Ring, 401 Mass. 59, 514 N.E.2d 663, 664 (1987)
(quoting Fireside Motors, Inc. v. Nissan Motor Corp., 395 Mass.
366, 372, 479 N.E.2d 1386 (1985) (quoting Restatement (Second)
of Judgments 27 (1982))). The record before us does not clearly establish whether
Willhauck raised a constitutional challenge to the section 25
"stop provision." This, however, makes no difference to our
analysis. Applying the principles of claim preclusion to
Willhauck's Fourth Amendment arguments in this 1983 action,
we hold that Willhauck's Suffolk County prosecution afforded
him the opportunity to present both his facial challenge to the
constitutionality of the stop provision and an as-applied
challenge to the conduct of MDC Officers Halpin and Perry. And, because it is possible that Willhauck did raise these
constitutional arguments, we find in the alternative that
reargument of these claims in this 1983 action would have
been barred by the doctrine of issue preclusion. Under the Massachusetts Rules of Criminal Procedure, all
defenses or objections based upon defects in the institution of
the prosecution, other than lack of jurisdiction or failure to
state a claim, must be raised by pretrial motion. See Mass. R.
Crim. P. 13(c); H. Alperin, 14 Massachusetts Practice, Summary
of Basic Law 704 (Supp. 1991). In the Suffolk County
prosecution, Willhauck was charged with a violation of section
25. If, as we assume, Willhauck did not raise his facial
attack to section 25 -- or an as-applied challenge to the
conduct of MDC Officer Halpin -- in the course of that
prosecution for violation of that statute, he was precluded
from raising it subsequently in his 1983 action under the
doctrine of claim preclusion. As we observed in Roy v. City of
Augusta, 712 F.2d 1517, 1521 (1st Cir. 1983), "state courts, too, are guardians of the federal constitution." When a party should reasonably foresee that an adverse state court judgment will create a constitutional issue, that issue should be argued before the state court. Where it is not, the party is barred by principles of res judicata from later raising the constitutional claim against the same parties in a federal section 1983 action.
Id. (citations omitted). On the other hand, if Willhauck did raise an unsuccessful
attack on section 25 in the Suffolk County prosecution,
Willhauck's only recourse for an erroneous denial of his
constitutional claims would have been to pursue the denial of
his facial challenge through the state courts and then by writ
of certiorari to the United States Supreme Court. Having
unsuccessfully raised a Fourth Amendment challenge to
prosecution under section 25, Willhauck would be collaterally
estopped from relitigating the issue in a 1983 action. See
Decker v. Hillsborough County Attorney's Office, 845 F.2d 17,
20 (1st Cir. 1988). If Willhauck did raise this challenge to
section 25, the Suffolk County court's verdict and judgment
operated as a valid and final judgment of an issue essential to
his conviction under section 25. Our conclusion that the Suffolk court judgment was a valid
and final judgment for purposes of issue preclusion analysis is
dictated by Willhauck's conduct of the appeal of that
conviction. Willhauck's appeal of his Suffolk County
conviction was denied on grounds of its lack of compliance with
the Massachusetts Appellate Rules. Willhauck attributes this
denial to Mass. R. Crim. P. 37(b)(2), which he asserts is
unconstitutional. We address this claim in the following
subsection of this opinion. That argument, however, is not
pertinent to the issue of whether Willhauck fully pursued his
opportunities for appeal in the Massachusetts courts. In the
appendix submitted to us by Willhauck there is no evidence of
any challenge to the clerk's denial of his attempt to appeal
his Suffolk County conviction. We must infer from the record,
and counsel's statement at oral argument, that the state court
appeal was "in limbo," that Willhauck uncharacteristically
chose not to pursue a state court appeal of his section 25
challenge, and that the Suffolk County court's determination
was final. Our conclusion that Willhauck failed to pursue his
available remedies after the Suffolk County clerk's denial of
his consolidated appeal is strengthened by a cursory review of
the Massachusetts Rules of Appellate Procedure. Willhauck was
convicted and sentenced in Suffolk Superior Court in October-
November of 1980, but delayed his appeal of that conviction
until after the dismissal of the Norfolk County charges in June
of 1981. Willhauck's "Notice of Joint Appeal" was filed with
both county clerks on July 9, 1981. Mass. R. App. P. 4
provides that appeals "shall be filed with the clerk of the
lower court within thirty days . . . ." We presume that this
rule provided the basis for the Suffolk County clerk's
statement that the appeal was "not in compliance" with the
Appellate Rules. The action of the Suffolk County clerk does not appear to
us to have been entirely dispositive of Willhauck's attempted
appeal. We note that Mass. R. App. P. 14(b) provides that an
"appellate court or a single justice for good cause shown may
upon motion [] enlarge the time prescribed by these rules
. . . [for up to] one year . . . from the date of the verdict." Furthermore, we observe that Massachusetts law permits a single
justice of the Massachusetts Supreme Judicial Court to grant an
alternative remedy: The supreme judicial court shall have general superintendance of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue all writs and processes . . . which may be necessary to the furtherance of justice and to the regular execution of the laws.
Mass. Gen. Laws Ann. ch. 211, 3 (West 1989). Cf.
Commonwealth v. Lopes, 21 Mass. App. Ct. 11, 483 N.E.2d 479,
483 (1985) (dictum noting availability of Rule 14(b) and ch.
211, 3 remedies to petitioner whose criminal appeal is
otherwise untimely); Petition of Dist. Atty. for Plymouth
Dist., 391 Mass. 723, 464 N.E.2d 62 (1984) ("211 petition"
appropriate when relief is necessary to prevent a violation of
substantive rights and irremediable error). Willhauck made use of this so-called "211 Petition" in
early phases of his double jeopardy litigation, see Brief for
Appellants at 9, and so we can only assume that his failure to
invoke the superintendency powers of the Supreme Judicial Court
after the denial of appeal in Suffolk County was not
inadvertent. This fact, in conjunction with his failure to
move for additional time under Rule 14(b), lead us to conclude
that Willhauck had not adequately invoked his state law
remedies. Under an issue preclusion analysis, then, dismissal
of the section 25 would have been fully consistent with the
principles of Massachusetts law applicable in this 1983 case. The district court's dismissal of Willhauck's facial
challenge was proper, as was its decision to preserve an issue
not fully adjudicated in the Massachusetts courts because of
the double jeopardy bar to the Norfolk County prosecution --
whether Milton Officer Moriarty had reasonable suspicion to
attempt to stop Willhauck when he "blue-lighted" him. In sum,
to the extent that Willhauck's section 25 arguments stated
claims of a violation of constitutional rights cognizable in
this 1983 action, Willhauck was precluded from making any
of these claims -- except his as-applied challenge to Officer
Moriarty's conduct -- after the Suffolk County adjudication.
B. Dismissal of the Challenge to Mass. R. Crim. P. 37(b)(2)
1. The Nature of the Constitutional Challenge In its order of August 27, 1984 dismissing Willhauck's
section 25 challenge, the district court also rejected
Willhauck's constitutional arguments challenging Mass. R. Crim.
P. 37(b)(2) (Issue 9 on appeal). Willhauck challenges this
dismissal, and urges that Rule 37(b)(2), "both on its face and
as applied," violated his constitutional rights insofar as it
permitted, inter alia, "duplicate and multiple criminal
charges." Rule 37, which governs "Transfer for Trial,"
provides in pertinent part that: A judge, upon motion of a defendant . . . , and after taking into account the convenience of the court, the parties, and their witnesses, may with the written approval of the prosecuting attorney in each division or county order the transfer and consolidation for trial of any or all charges pending against the defendant in the several divisions or counties of the Commonwealth.
Mass. R. Crim. P. 37(b)(2). Willhauck's contention, in essence, is that the
"prosecutorial veto" permitted by Rule 37(b)(2) exposed
Willhauck and other Massachusetts criminal defendants to
duplicative prosecutions in violation of the Double Jeopardy
Clause. Both in his amended complaint and on this appeal,
Willhauck attacks the conduct of the prosecutors in Norfolk and
Suffolk Counties who denied his attempts at consolidation. Willhauck supplements his double jeopardy arguments with claims
that the "unbridled discretion" permitted prosecutors under
Rule 37(b)(2) is in violation of the Due Process and Equal
Protection guarantees of the Fourteenth Amendment. Willhauck directs similar constitutional arguments against
the Suffolk County clerk's actions. He suggests that the
clerk's refusal to accept his consolidated appeal was a similar
abuse of discretion caused by the operation of Rule 37(b)(2). He maintains that any delay in filing an appeal of his Suffolk
convictions was necessitated by his having to first secure
dismissal of the Norfolk County prosecution. These "appellate
procedural inconsistencies," Willhauck urges, violated his
constitutional rights. The district court dismissed Willhauck's constitutional
challenge to Rule 37(b)(2). It concluded that Willhauck had
failed to state a claim because jeopardy had never attached in
his second state court prosecution in Norfolk County. Because
of the order of dismissal by the Dedham District Court on
double jeopardy grounds, the district court reasoned, there
could have been no double jeopardy violation and therefore no
constitutional violation for purposes of a 1983 claim. The
district court further observed that the doctrines of judicial
and prosecutorial immunity would in any case bar Willhauck from
monetary recovery against officials in the Massachusetts court
system for the financial and emotional of costs of having to
secure the second dismissal. Our review of the dismissal of this challenge to Rule
37(b)(2) is de novo. See Kale, 924 F.2d at 1165. We think
that the district court's analysis correctly identified the two
distinct issues underlying Willhauck's challenge to Rule
37(b)(2): whether the use of this rule by the county
prosecutors violated Willhauck's rights to be free from double
jeopardy, and whether Rule 37, insofar as it forced Willhauck
to undertake separate defenses and appeal of his actions on the
night of the car chase, occasioned an inconvenience of
sufficient magnitude to constitute a violation of Willhauck's
due process and equal protection rights. Whether these issues
are properly before us, however, is a different question that
requires further examination of the events leading up to this
appeal.
2. Background to Willhauck's Challenge to Rule 37(b)(2) Before considering the district court's dismissal of the
constitutional challenges to Rule 37(b)(2), we think it
appropriate to review the history of Willhauck's attacks on
Rule 37(b)(2) in earlier proceedings. Such review helps
properly frame Willhauck's appeal of this issue. Although he was unable to obtain the consent of the
Norfolk and Suffolk County prosecutors to consolidation of the
prosecutions against him in Suffolk Superior Court, Willhauck
nonetheless filed a consolidation motion. When that motion was
denied because of the refusal of the prosecutors to give their
consent, Willhauck petitioned the Massachusetts Supreme
Judicial Court for relief from the Suffolk court's refusal to
order consolidation. A single Justice of the Massachusetts
Supreme Judicial Court denied the petition. See Brief for
Appellants at 9. Because of his lack of success in the Massachusetts
courts, Willhauck brought his first 1983 action in August
1980 in an attempt to prevent the Suffolk County prosecution
from going forward. At that time, Willhauck appears to have
urged much the same double jeopardy arguments that he now
raises against Rule 37(b)(2). In that first 1983 action,
which predated the instant 1983 action by nearly three years,
the remedies that Willhauck sought were purely equitable in
nature -- i.e. a TRO and preliminary and permanent injunctions
barring the county prosecutors from proceeding against him. See Willhauck v. Flanagan, 448 U.S. at 1324. Willhauck's venture into the federal courts proved
unsuccessful in preventing the two prosecutions from proceeding
against him. The district court denied Willhauck's request for
a TRO on Younger abstention grounds. Id. Willhauck moved in
this court for a stay of the district court's denial of the
TRO, but we denied the motion. Next, Willhauck petitioned
Justice Brennan for a stay pending resolution of an appeal of
the district court's denial of the TRO in this court. Justice
Brennan declined the application on the grounds that
Willhauck's double jeopardy claims were premature. Id. at
1325. As a consequence of this denial, the Suffolk County
prosecution went forward and resulted in Willhauck's conviction
on the two misdemeanor charges. Eventually, Willhauck
vindicated his double jeopardy claims in the Norfolk County
prosecution by securing the dismissal of the charges against
him in Dedham District Court in May of 1981. Thus, by the time
Willhauck initiated the instant 1983 action for damages,
there was no need for the prospective relief he had originally
sought while both county prosecutions were pending. Willhauck's complaint in the second 1983 action reflected
this change of events. In the new action, Willhauck sought
damages for alleged deprivation of constitutional rights
occasioned by the refusal of the prosecutors in both counties
to allow consolidation under Mass. R. Crim. P. 37(b)(2). Apart
from damages, the only alternative relief requested was a
declaration of the unconstitutionality of Rule 37(b)(2). There was one major difference in Willhauck's new 1983
action: only Norfolk and Suffolk Counties were named
defendants. Where Willhauck had earlier sought injunctive
relief directly against the county prosecutors about to proceed
against him, Willhauck's complaint now focussed on
constitutional violations alleged to have been committed by
Suffolk and Norfolk Counties "through their respective
Attorneys and under color of said Rule 37(b)(2)." Willhauck's
request for a declaration that Rule 37(b)(2) was
unconstitutional appears to have been an attempt to restate in
broader terms the allegations of unconstitutional conduct
underlying his damages claim against the counties -- i.e., that
Norfolk and Suffolk County prosecutors had violated his double
jeopardy and due process rights. Instead of injunctive relief
against county prosecutors acting in their official capacity,
Willhauck now sought damages against the counties themselves. Some confusion appears to have arisen following this
change in approach. The district court's dismissal of
Willhauck's constitutional challenge to Rule 37(b)(2) indicates
that Willhauck's arguments may have given the impression that
he was suing the county prosecutors in their individual
capacity for damages, even though these prosecutors were not
named defendants. This background helps makes sense of the
district court's observations on the absolute immunity of
prosecutors, which would otherwise have been completely
inapposite to its ruling on the motion to dismiss Willhauck's
challenge to Rule 37(b)(2). The nature of the relief
originally sought by Willhauck in this action was damages
against Norfolk and Suffolk Counties for their prosecutors' use
of Rule 37(b)(2) and a declaration of the unconstitutionality
of that Rule.
3. Willhauck's Claim On Appeal. Review of this procedural history makes it possible to render intelligible the current state of this claim as it now
comes before us on appeal. The lack of clarity in Willhauck's
Rule 37(b)(2) arguments in district court has persisted in his
brief on appeal. This confusion is evident from the fact that
Willhauck has chosen only to appeal the district court's denial
of his challenge to the constitutionality of the rule. He has
not raised as an issue on appeal the dismissal of Norfolk and
Suffolk Counties as defendants in this action. What we are
confronted with in Willhauck's brief is a rambling recitation
of the alleged constitutional infirmity of Rule 37(b)(2) as it
operates in Massachusetts. The most direct manner of cutting through the procedural
knots that have arisen in the course of the disposition of
Willhauck's Rule 37(b)(2) arguments is to determine whether
Willhauck stated a claim of constitutional deprivation under
that Rule in the first place. It is axiomatic that in order to
state a claim under 1983, the plaintiff must make a showing
that some conduct committed under color of state law has
resulted in a deprivation of rights secured by the Constitution
and laws of the United States. See, e.g., Chongris, 811 F.2d
at 40 (citing Parratt v. Taylor, 451 U.S. 527, 535). In
reviewing the district court's dismissal of Willhauck's Rule
37(b)(2) claims, we must determine whether Willhauck properly
alleged any deprivation of a constitutional right sufficient to
support both a facial attack on the Rule and, as we must assume
was Willhauck's original intention in suing the counties,
claims for damages for that violation. We agree with the district court that Willhauck failed to
properly allege such a deprivation when he challenged the
operation of Rule 37(b)(2) on double jeopardy grounds. Jeopardy only attaches in a jury trial after the jury is
empaneled and sworn, or in the case of a bench trial, when the
court begins to hear evidence. See, e.g., Serfass v. United
States, 420 U.S. 377, 388 (1975). Here, Willhauck was
successful in obtaining the dismissal of the Norfolk County
charges on the strength of a double jeopardy claim -- i.e.,
that prosecution in Norfolk County for his actions on the night
of the car chase would necessitate charging him with identical
(or lesser included) offenses to those for which he had already
been convicted in Suffolk County. See Further Ruling on
Defendant's Motion to Dismiss, Massachusetts v. Willhauck, No.
2872-5 Crim. (District Court Dept., Dedham Division, May 27,
1981). Consequently, jeopardy did not attach in Willhauck's
second prosecution. Given his successful invocation of the
protection of the Double Jeopardy Clause as a barrier to the
Norfolk County prosecution, Willhauck could not claim in this 1983 action that he had been placed in jeopardy for a second
time in violation of his constitutional rights. We next turn to Willhauck's attack on the conduct of the
Norfolk and Suffolk County prosecutors who refused his request
for consolidation of the prosecutions arising from the car
chase. Willhauck's attack on the operation of Rule 37(b)(2)
intimates bad faith and an abuse of discretion on the part of
these prosecutors because they forced him to mount a defense in
two separate jurisdictions. To the extent that Willhauck's
allegations identify a constitutional claim, we think it based
on some of the same concerns of due process and equal
protection underlying the Supreme Court's cases on selective
and vindictive prosecution. In several different contexts, the Supreme Court has
observed that prosecutorial discretion is "'subject to
constitutional restraints.'" Wayte v. United States, 470 U.S.
598, 608 (1985) (citations omitted). The Court has held that
it is a violation of due process when a defendant, as a result
of the exercise of his rights to attack his conviction, is
subsequently subjected to more severe sentencing after retrial,
or reindictment on a more severe charge. See Bordenkircher v.
Hayes, 434 U.S. 357, 362 (1978) (citing North Carolina v.
Pierce, 395 U.S. 711, 725 (1969), and Blackledge v. Perry, 417
U.S. 21, 27 (1974)). In these cases, the Court applied the
same underlying principle: that it is a violation of due
process for a prosecutor or judge, out of vindictiveness, to
attempt to penalize a defendant in the exercise of his legal
rights. See Bordenkircher, 434 U.S. at 363. Furthermore, the
Court has acknowledged that prosecutorial discretion in the
decision whether to prosecute is subject to the constraints of
the Equal Protection Clause: "the decision to prosecute may
not be 'deliberately based upon an unjustifiable standard such
as race, religion, or other arbitrary classification.'" Wayte,
470 U.S. at 608 (citations omitted). Claims of selective
prosecution are judged according to ordinary equal protection
standards. Id. Under any conceivable approach derived from these cases,
however, we think that Willhauck's allegations in this 1983
action failed to state a claim of a violation of his
constitutional rights. To establish a claim of vindictive
prosecution, there must either be allegations of actual
vindictiveness or of circumstances showing a sufficient
likelihood of vindictiveness by a prosecutor. See United
States v. Garcia-Rosa, 876 F.2d 209, 232 (1st Cir. 1989);
United States v. Marrapese, 826 F.2d 145, 147 (1st Cir. 1987)
(citing United States v. Goodwin, 457 U.S. 368, 376-80 (1982)). In his complaint, Willhauck never suggested that the decision
of the Norfolk and Suffolk County prosecutors to refuse to
allow the consolidation of the prosecutions against him was
motivated by vindictiveness. Because Willhauck's claims of
"harassment" were directed at the burden placed on him by the
operation of Rule 37(b)(2), and not on any allegation of a
vindictive purpose motivating the prosecutors who applied this
Rule, there could have been no claim of vindictive prosecution. Any claim of selective prosecution that might have inhered
in Willhauck's argument that his equal protection rights were
violated by the operation of Rule 37(b)(2) was also without
proper support. Ordinarily, a claim of selective prosecution
requires a showing that the challenged decision to prosecute had "a discriminatory effect and that it was motivated by a
discriminatory purpose." Wayte, 470 U.S. at 608. In this
circuit, we have consistently required that such a claim be
supported by a showing that the decision to prosecute was an
intentional form of discrimination against the defendant. See
United States v. Michaud, 860 F.2d 495, 499-500 (1st Cir.
1988); Hernandez v. Commissioner, 819 F.2d 1212, 1225-27 (1st
Cir. 1987), aff'd, 490 U.S. 680 (1989). It must be shown that
others similarly situated have not been prosecuted and that the
decision to prosecute has been motivated by an impermissible
reason. Michaud, 860 F.2d at 499-500 (citations omitted). Willhauck, however, offered only a bald assertion that his
Equal Protection rights had been violated, and in his brief on
this appeal is able only to observe that Rule 37(b)(2) operates
to create different "classes" of defendants -- those whose
offenses cross county lines, and those that do not. It is
sufficient to observe that Willhauck's complaint, which was not
supported by allegations of discriminatory intent by the county
prosecutors, failed to even approach the bare minimum for a
claim of a violation of his equal protection rights. As for Willhauck's attack on the refusal of the Suffolk
County clerk to accept his appeal on grounds of untimeliness,
we see no merit in his suggestion that this refusal violated
his procedural due process rights. Because Willhauck has not
in any way demonstrated how such a refusal deprived him of any
further rights to appeal, and where it is apparent that he
failed to pursue his state law remedies for that denial, we
think his claims of a deprivation of constitutional rights
unfounded. There was, therefore, no constitutional claim in
this aspect of his case sufficient to support a 1983 claim
attacking the operation of Rule 37(b)(2). In sum, where there was no showing of a violation of
Willhauck's constitutional rights, the district court's
dismissal of Willhauck's challenges to Rule 37(b)(2) was
appropriate -- regardless of whether these claims were actually
intended to effectuate declaratory relief or damages against
the counties and their prosecutors. It was unnecessary for
the district court to reach issues of prosecutorial immunity,
insofar as Willhauck's challenge to Rule 37(b)(2) did not
embrace a damages claim against the Norfolk and Suffolk County
prosecutors in their individual capacity. Furthermore, because
there was no valid federal claim underlying Willhauck's 1983
action, dismissal by the district court of his Massachusetts
constitutional challenges to Rule 37(b)(2) would have been
appropriate. See United Mine Workers v. Gibbs, 383 U.S. 715
(1966).
C. Dismissals of the Town Of Milton and MDC With the dismissal of Willhauck's challenges to Rule
37(b)(2)'s "prosecutorial veto" and the section 25 "stop
provision," the district court eliminated those aspects of his
complaint that sought relief of a purely declaratory nature. What remained were damages claims against the MDC, Town of
Milton, Norfolk and Suffolk Counties, and the various police
officers named as defendants in their individual capacity for
their conduct during the car chase and nighttime intrusion. In August of 1984, on the same day as its order dismissing
the constitutional challenges to Rule 37(b)(2) and section 25's
"stop provision," the district court also dismissed the case
against the MDC. The court ruled that the MDC was an agent of
the Commonwealth of Massachusetts and was as such immune from
suit for damages under the Eleventh Amendment. Four months later, on December 12, 1984, the district
court also dismissed the case against the Town of Milton by
rejecting three separate theories of municipal liability. First, the court determined that Willhauck had failed to
adequately allege a claim of inadequate training and
supervision sufficient to support municipal liability against
the Town of Milton. Second, the court found that Willhauck
failed to state claims of constitutional magnitude by alleging
that his due process rights had been violated by the Town of
Milton's failure to investigate his allegations of police
brutality. Third, the district court found baseless
Willhauck's claims that his Fourth Amendment rights had been
violated by the town's practice of allowing the execution of
arrest warrants at night. See Willhauck v. Halpin, 599 F.
Supp. at 283. Willhauck challenges both dismissals (Issues 7 & 8 on
appeal). As to the dismissal of the MDC, Willhauck insists
that the district court acted precipitously in finding as a
matter of law that the MDC was an agent of the Commonwealth of
Massachusetts entitled to Eleventh Amendment immunity. Willhauck contends that there should have been further factual
inquiry into the question of whether a damages award against
the MDC would flow from the state treasury. As for the
dismissal of his three claims against the Town of Milton,
Willhauck appeals only the dismissal of the claim of inadequate
police training and supervision arising from the events
surrounding the night of the car chase. Turning first to the dismissal of the MDC on Eleventh
Amendment grounds, we are unconvinced by the district court's
ruling that the MDC is an agent of the Commonwealth of
Massachusetts. We have repeatedly recognized that the
determination of whether a public agency or institution is
entitled to Eleventh Amendment immunity -- as an "arm of the
state" -- is necessarily factually based. See Ainsworth
Aristocrat Int'l Pty., Ltd. v. Tourism Co. of Puerto Rico, 818
F.2d 1034, 1038 (1st Cir. 1987) ("The decision whether a state
institution or entity is an arm of the State . . . should not
be made without a full examination of all the factors [bearing
on the issue of state control]."). See also Puerto Rico Ports
Authority v. M/V Manhattan Prince, 897 F.2d 1, 9 (1st Cir.
1990); Blake v. Kline, 612 F.2d 718, 723 (3rd Cir. 1979), cert.
denied, 447 U.S. 921 (1980). Ordinarily, the next step in our de novo review would be
to determine whether Willhauck properly alleged claims of
municipal liability against the Town of Milton. Because of the
district court's erroneous ruling as to the MDC's immunity from suit, we would also have attempted to determine whether
the theories of municipal liability alleged against the Town of
Milton stated proper claims against the MDC. We would have
had to ascertain whether Willhauck properly stated a 1983
claim against the MDC where he maintained that 1) the alleged
beating evidenced inadequate municipal supervision of police
conduct, and 2) that the nighttime intrusion indicated the
existence of an unconstitutional municipal custom of nighttime
service of arrest warrants. Cf. Bordanaro v. McLeod, 871 F.2d
1151 (1st Cir.), cert. denied, 493 U.S. 820 (1989) (outlining
standards for proof theories of inadequate municipal training
or supervision and unconstitutional municipal custom). We
would review Willhauck' factual averments as true and construe
them in the light most favorable to him. See Dartmouth Review
v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). We
would then determine whether valid claims had been stated
against Milton and the MDC under either of Willhauck's Monell-
based theories. Given the posture of this case on appeal, however, such an
inquiry is unnecessary. Willhauck has not raised as an issue
on appeal the grant of directed verdicts for Milton Officers
Moriarty and Galvin and Dedham Officers Dietenhofer and Tapsel. Nor has he challenged the jury verdict finding MDC Officers
Halpin and Perry not liable. Willhauck's failure to challenge
these determinations on appeal means that we are bound by the
findings below that there were no violations of Willhauck's
constitutional rights by any of the police officers involved in
the car chase and alleged beating. It follows ineluctably that
where there are no constitutional violations by municipal
employees there can be no claim of inadequate supervision or
training against a municipal employer. See City of Canton, 489
U.S. 378, 385-87 (1989) ("a municipality can be found liable
under 1983 only where the municipality itself causes the
constitutional violation at issue."). Willhauck's claims
against Milton or the MDC under an inadequate municipal
supervision theory are therefore moot. Willhauck has also not appealed the trial court's findings
as to the individual officers involved in the nighttime
intrusion. Specifically, Willhauck has not challenged the
district court's October 1985 rulings dismissing MDC Officers
Callender, Huffam and Mills from the case and granting summary
judgment to Milton Officer Rogers. Here too we are bound by
the district court's findings that no violations of Willhauck's
constitutional rights occurred in the course of the nighttime
service of the arrest warrant. Consequently, any claims
against Milton or the MDC based on an allegation of
unconstitutional municipal custom are also moot.
D. Dismissal of the "Nighttime Intrusion" Claim Willhauck devotes a separate section of his brief to the
argument that the nighttime intrusion constituted a deprivation
of his Fourth Amendment rights (Issue 8 on appeal). Willhauck
attacks, in general terms, the dismissal of this "claim,"
although it is not explained as to which defendants Willhauck
believes this unspecified "dismissal" to have been erroneously
made. Although not clear from his brief, Willhauck's arguments
appear to be another version of his challenge to the district
court's dismissal of his unconstitutional municipal custom
claim based on the nighttime intrusion against the Town of
Milton, and, implicitly, the MDC. Willhauck's only reference
to the district court's dismissal of non-municipal defendants
is his assertion that the district court "misconstrue[d] the
law" at the hearing in October of 1985 in which the MDC and
Milton Officers involved in the nighttime intrusion were
dismissed as defendants in the action. We conclude that Willhauck has focussed this argument
exclusively against the dismissals of the Town of Milton and
MDC. We base this assumption on the fact that the brief
specifically cites the district court's ruling dismissing the
Fourth Amendment claim against the Town of Milton. Furthermore, the brief refers to the "MDC's and Milton's
nighttime intrusion of the Willhauck home" and the "lack of
responsible policy and supervision by Milton and the MDC." It is unnecessary for us to review the merits of his
Fourth Amendment arguments concerning the nighttime intrusion,
for the reasons discussed in the previous subsection. We do
not read Willhauck's oblique reference to the October
dismissals, standing alone, as a challenge to the dismissal of
the action against the MDC and Milton officers involved in the
nighttime intrusion. Cf. Zannino, 895 F.2d at 17 ("issues
adverted to in a perfunctory manner, unaccompanied by some
effort at developed argumentation, are deemed waived."). Because Willhauck has waived any appeal of the findings of a
lack of liability against the individual officers involved in
the nighttime intrusion, it is unnecessary for us to explore
his attempts to restate his municipal liability theories.
E. The District Court's Conduct of the Trial Willhauck's last set of arguments center on certain of the
district court's rulings prior to and during the trial of the
remaining six police officer defendants. Willhauck's general
contention is that these rulings amounted to a deprivation of
his "due process" rights.
1. Refusal to Allow Argument on the "Unlawful Attempt to Stop" Willhauck first argues that he was deprived of a fair
trial because of the district court's failure to allow him to
argue that Milton Officer Moriarty lacked reasonable suspicion
to attempt to stop him at the inception of the car chase. In
dismissing Willhauck's constitutional challenge to the section
25 "stop provision," the district court left open the purely
factual issue of whether Officer Moriarty had reasonable
suspicion to stop Willhauck. On the first day of trial,
however, the district court disallowed any argument by
Willhauck that Moriarty lacked reasonable suspicion to initiate
the attempted stop when he turned on his blue lights. The
court reasoned that regardless of whether the attempted stop by
Moriarty was reasonable, the fact that Willhauck had
subsequently chosen to flee at speeds vastly in excess of
posted limits became a "superseding" cause requiring the police
chase, stop and arrest of Willhauck. The court thus observed
that any separate claim because of Officer Moriarty's having an inadequate basis for signaling the plaintiff to stop is so technical and insubstantial in the circumstances of this case as not to amount to a separate cause of action. To have a cause of action, there must be a basis for a damage claim, and the damages received by the plaintiff can in no way be attributed to his failure to stop when Officer Moriarty signaled by blinking his blue lights. . . . [T]he plaintiff's having decided to . . . flee at a high rate of speed was at law surely a superseding cause in terms of the damages that were received. So had he stopped, there would have been no damage. . . . Any other consequence is purely speculative. So there are not in this case separate claims to be submitted to the jury on the theories of false arrest and a Fourth Amendment violation . . . .
Appendix at 25. The district court therefore precluded all of
Willhauck's arguments that suggested that police had "provoked"
him into speeding off to avoid the deprivation of his
constitutional rights that would have resulted from his
stopping after Moriarty turned on his blue lights. Willhauck now attacks the district court's rulings,
claiming that the court deprived him of a fair trial when it
deprived him of any opportunity to argue the unlawfulness of
Moriarty's initial attempt to stop him (Issues 4 & 5 on
appeal). Because Moriarty lacked reasonable suspicion to stop
him at the moment he first turned on his blue lights, Willhauck
contends, any ensuing reasonableness generated by Willhauck's
flight would amount to a form of "bootstrapping." Willhauck
argues that since Moriarty had no reasonable suspicion to
attempt to stop him in the first place, Willhauck became
entitled to exercise his "citizen's right to self-defense -- a
right to resist an unreasonable seizure." Willhauck believes
he should have been allowed to argue his theory of a "right to
resist," as well as to receive a jury instruction on this
"justification" theory. These contentions are completely without merit. A Fourth
Amendment seizure does not occur when a police officer turns on
his blue lights and thereby signals the driver of a vehicle to
pull over. For a seizure to occur, there must be "an
acquisition of physical control." Brower v. County of Inyo,
489 U.S. 593, 597 (1989). In Brower, the Court determined that
a seizure for Fourth Amendment purposes occurred when a
petitioner who was leading police officers on a high speed
chase crashed into a police roadblock. The Court reasoned that
a seizure takes place only when there is a governmental termination of freedom of movement through means intentionally applied. . . . The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means --- his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and stopped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.
Id. at 596-97 (emphasis in original). Implicit in the Court's
reasoning is the concept that a seizure does not occur where
the suspect being signalled by the police does not stop his
vehicle. Cf. United States v. Hensley, 469 U.S. 221, 226
(1985) ("stopping a car and detaining its occupants constitute
a seizure within the meaning of the Fourth Amendment . . . ."). The fact that Willhauck was able to drive away from Officer
Moriarty at speeds approaching eighty miles an hour belie any
assertion that any seizure occurred that terminated Willhauck's
"freedom of movement." Here, because Willhauck never stopped
his vehicle when signalled by Officer Moriarty, there could
have been no Fourth Amendment violation predicated on
Moriarty's alleged lack of suspicion to "blue light"
Willhauck's vehicle. We therefore affirm the district court's
refusal to allow Willhauck to present this claim. Because
we find that no Fourth Amendment violation occurred, it is
unnecessary for us to examine the merits of Willhauck's
contentions regarding the dimensions of a "right to resist" an
unconstitutional seizure. 2. Refusal to Allow Pursuit Policies Into Evidence Willhauck's next attack focusses on the refusal of the
district court to allow evidence concerning the pursuit
policies of the MDC and Town of Milton, as well as provisions
of Massachusetts law governing police conduct during an
emergency pursuit. See Mass. Gen. Laws Ann. ch. 89, 7B (West
1990). These policies, in conjunction with section 7B,
establish the general principle that police officers should
conduct the pursuit of a suspect in such a manner as to avoid
endangering the public. Willhauck challenges the district
court's refusal to allow these policies into evidence to
support his claim that the officers pursuing him on the night
of the car chase "ignored their departmental pursuit policies"
(Issue 6 on appeal). Willhauck also claims that the district court erred
because it refused to allow the testimony of an expert on
"police matters including pursuit policies." This expert would
have demonstrated how the conduct of the MDC and Milton
officers violated their established pursuit policies. Willhauck believes that this testimony, in conjunction with the
pursuit policies, would have constituted "pertinent evidence of
police responsibility" for causing the chase. Furthermore, he
argues that such evidence would show "deficiencies in both
departments in controlling the pursuit." We review a district court's ruling on the admission of
evidence and expert testimony under an abuse of discretion
standard. See, e.g., Belber v. Lipson, 905 F.2d 549, 551 (1st
Cir. 1990); Forrestal v. Magendantz, 848 F.2d 303, 305-06 (1st
Cir. 1988). Here, we find that given the posture of the case
at the time of trial, the evidence adverted to by Willhauck
would have been immaterial. We are unable to see how violation
of police pursuit policies would have been material to
Willhauck's claims in this section 1983 action that his
constitutional rights were violated by the police. The manner
in which the police attempted to stop Willhauck in the course
of the car chase is not pertinent to the issue of whether after
the stop Willhauck's constitutional rights were violated by MDC
and Milton officers. Furthermore, Willhauck's vague assertions
that the conduct of the police during the chase goes to the
issue of police "responsibility" are simply newly-clothed
versions of the argument the district court properly rejected -
- that the attempt to stop Willhauck was unlawful from its
inception. Our review of the record in this appeal has included all
the materials submitted by Willhauck, including the proposed
Addendum to Plaintiffs, Appellants' Reply Brief submitted after
oral argument. CONCLUSION The judgments of the district court are AFFIRMED. Costs
awarded to the appellees.