**Francis A. WILLHAUCK, Jr., Plaintiff, Appellant,**

v.

**Paul HALPIN, et al., Defendants, Appellees.**

No. 89–1469.

United States Court of Appeals, First Circuit.

Heard Oct. 4, 1989.

Decided Nov. 21, 1990.

Robert C. Hahn with whom Han & Matkov, Boston, Mass., was on brief for appellant.

Gary J. Mena, Asst. Atty. Gen., Middleton, Mass., with whom James M. Shannon, Atty. Gen., Boston, was on brief, for appellee Metropolitan Dist. Com'n.

John P. Flynn with whom Murphy, Hesse, Toomey & Lehane, Quincy, Mass., was on brief for appellees Paul Halpin, the Town of Milton, John Moriarty, Robert Galvin and James Rogers.

Before BOWNES, Circuit Judge, BROWN,* Senior Circuit Judge, and BREYER, Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge:

In July 1982, the Willhaucks filed this multi-party, multi-claim action under 42 U.S.C. § 1983 against various police officers and municipal entities, 16 defendants in all, involved in a late-night, high-speed chase through the city and outskirts of Boston and in a related subsequent intrusion into the Willhaucks' home.[1] At various times during the extended pre-trial proceedings and at trial the district court dismissed on the merits several of the Will-

---

* Of the Fifth Circuit, sitting by designation.

1. The 16 defendants named in the original and amended complaints include 11 police officers and five government entities. The government entities named are the Towns of Milton and Dedham, the Counties of Suffolk and Norfolk, and the Metropolitan District Commission (MDC). The police officers, their police departments, and the nature of their alleged involvement in this case include:

| Defendant | P.D. | Involvement |
|---|---|---|
| Belmonte | Dedham | Chase |
| Callender | MDC | Chase/Intrusion |
| Dietenhofer | Dedham | Chase |
| Galvin | Milton | Chase |
| Halpin | MDC | Chase |
| Huffam | MDC | Intrusion |
| Mills | MDC | Intrusion |
| Moriarty | Milton | Chase |
| Perry | MDC | Chase |
| Rogers | Milton | Intrusion |
| Tapsel | Dedham | Chase |

haucks' claims and all defendants except two police officers, who later obtained a favorable jury verdict. The Willhaucks appealed on the merits of this case previously, and this Court dismissed for want of jurisdiction.[2] They again appeal, not from the merits (or demerits) of the judgment entered on the jury verdict, but rather from errors in one or more of the previous dismissals. They contend that final judgment was never entered for purposes of appeal as required by 28 U.S.C. § 1291 and Federal Rules of Civil Procedure Rules 54(b), 58, and 79 as to the pre-trial and directed verdict orders dismissing the several defendants and claims.[3] We agree and vacate the district court's denial of the Willhaucks' motion for entry of judgments and remand.

### The Midnight Ride—Not Paul Revere's

The merits of this case involve claims that, late on the night of July 1–2, 1979, several police officers of the towns of Milton and Dedham and the Metropolitan District Commission (MDC) instituted an unlawful, high-speed automobile chase of Francis A. Willhauck, Jr., through Milton, Dedham, and the Counties of Suffolk and Norfolk. The complaint alleges that the officers then beat Willhauck and, some months later, unlawfully invaded his and his family's home in the middle of the night. The amended complaint names as defendants 11 police officers, the MDC, the towns of Milton and Dedham, and the Counties of Suffolk and Norfolk. Damages and other declarative relief were sought for alleged violations of the Willhaucks' civil rights.

The procedural history of this case is quite complex and lengthy, but we emphasize only those events most relevant to this appeal. During the pre-trial phase of this lawsuit, the lower court granted Motions to Dismiss in favor of the towns of Dedham[4] and Milton,[5] and the MDC,[6] and also dismissed four of the 11 police officers named as defendants.[7] The court disposed of

2. We dismissed because the plaintiffs filed their Notice of Appeal from the district court's denial of their Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for a New Trial, one day prior to the lower court's entry of judgment on the Motion. *See Willhauck v. Halpin*, No. 87–2127 (1st Cir. Oct. 13, 1988).

3. In entertaining this appeal, we rely on this Circuit's long-held view that a district court's order refusing to enter judgments is itself appealable. *See In re Forstner Chain Corp.*, 177 F.2d 572 (1st Cir.1949). *Accord State Nat'l Bank of El Paso v. U.S.*, 488 F.2d 890, 893 (5th Cir. 1974).

4. The court granted Dedham's F.R.Civ.P. 12(b)(1) and 12(b)(6) Motion to Dismiss in a handwritten notation in the margin of the motion itself. The notation states: "9/12/82 Upon consideration of motion and opposition, motion allowed and case dismissed as against defendant Town of Dedham. /s/ Garrity, J." The clerk's docket entry quotes this order in its entirety.

5. The court granted Milton's 12(b)(6) Motion to Dismiss in a four-page "Memorandum and Order" dated December 12, 1984, and signed by Judge Garrity. 599 F.Supp. 282. The docket entry reflecting the court's action reads as follows:

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| Dec. 12 | | GARRITY, J. MEMORANDUM AND ORDER GRANTING THE TOWN OF MILTON'S MOTION TO DISMISS ENTERED, FILED. (cc/cl, Full Public.) |

6. On August 27, 1984, the court dismissed the MDC on that party's 12(b)(1) and 12(b)(6) motion in a one-page Order, assigning reasons. The clerk's docket entry states:

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| Aug. 27 | | GARRITY, J. ORDER DISMISSING DEFT METROPOLITAN DISTRICT COMM. ENTERED, FILED. (cc/cl) |

7. The court granted a 12(b)(1) and 12(b)(6) Motion to Dismiss in favor of Callender, Huffam, and Mills on October 18, 1985, in a handwritten notation in the margin of these defendants' motion. The notation states:

10/18/85
After hearing, granted and so ordered as to defendants Callender, Huffam and Mills, and so ordered; but denied as to defendants Halpin and Perry. Reasons dictated, at close of hearing, in open court.
/s/ Garrity, J.

three other parties before trial, including the Counties of Suffolk and Norfolk [8] and Officer Belmonte. With regard to Belmonte, the record does not contain either the motion which the court acted upon or the order by which it dismissed this defendant.[9] With all of the government entities out, this case finally went to trial on August 11, 1987. On its sixth day, at the close of the Willhaucks' presentation of evidence, the court directed verdicts in favor of four of the six remaining police officer defendants.[10]

At the conclusion of the trial, the jury returned a verdict in favor of the remaining police officers, Halpin and Perry, and the clerk entered judgment on the verdict, mentioning only these two defendants.[11]

The Willhaucks have taken two steps toward appeal of the district court's actions in this suit. The first step began with a motion "for Judgment Notwithstanding the Verdict, or in the Alternative, for a New Trial." *See* F.R.Civ.P. 50(b), 59. The Willhaucks then filed a Notice of Appeal of the district court's denial of this motion a day before the lower court entered its order denying the motion. After requesting briefs on the merits and hearing oral argument, this Court dismissed the Willhaucks' appeal for want of a timely Notice of Appeal. *See* F.R.A.P. 3(a), 4(a)(4).[12] In the meantime, the time for filing an effective Notice of Appeal from the district court's denial of their motion for judgment n.o.v. or new trial expired.

Educated by this exposure to the technical niceties of the Notice of Appeal, F.R.A.P. 4(a)(4), and the proper form for entries of judgment, F.R.Civ.P. 58, 79, the Willhaucks' counsel now focuses on reviving an

---

Also on that date, the court granted Rogers' Motion for Summary Judgment. The handwritten grant in the margin of the motion states: "10/18/85 After hearing, allowed and so ordered on grounds dictated in open court. /s/ Garrity, J." The clerk entered the full substance of these orders in the docket.

**8.** We assume that the court dismissed the Counties of Suffolk and Norfolk via its denial of the Willhaucks' "Motion to Default Defendant Counties for Failure to Respond to Complaint." The

court's handwritten notation in the margin of this motion states: "10/18/85 At hearing, denied on the ground of mootness. /s/ Garrity, J." According to the transcript of the October 18, 1985, hearing, the court found that the Willhaucks' claims against these entities were linked to the claims against the MDC, which the court had already dismissed. At the hearing Judge Garrity stated: "I have considered that those [claims against Suffolk and Norfolk Counties] have been mooted by the Court's previous rulings." The docket reflects this disposition:

| DATE | NR. | PROCEEDINGS |
|------|-----|-------------|
| Oct. 18 | | GARRITY, J. re: # 162 [Plaintiffs' Motion] ... At hearing, Denied on the ground of mootness. FILED. (cc/cl) |

**9.** The only evidence that the court dismissed this party (other than the *absence* of evidence that the claim against him was presented to the jury) is the fact that, in the caption on the remaining defendants' Requests for Jury Instructions, Belmonte's name is struck through.

**10.** These were Officers Dietenhofer, Galvin, Moriarty, and Tapsell. The court noted the following in the margin of each motion: "8/18/87

After hearing, motion allowed and so ordered. /s/ Garrity, J." The court denied Halpin's and Perry's Motions for Directed Verdict, noting in the margins of the two documents: "8/18/87 After hearing, denied. /s/ Garrity, J."

The docket entry indicates that all six defendants filed motions for directed verdict and that the court acted upon them, but does not indicate how or for whom the court ruled. It reads:

| DATE | NR. | PROCEEDINGS |
|------|-----|-------------|
| Aug. 18 | | GARRITY, J. –Trial continues. Evidence. P rests. Adjourned to tomorrow at 10:00 AM. *(Rulings made on 6 motions to dismiss).* |

(Emphasis added.)

**11.** The court's order of judgment reads as follows:

In accordance with the verdict of the jury returned on August 20, 1987, it is ORDERED:

that judgment for the defendants Paul Halpin and John Perry be, and it is hereby, entered.
/s/ Stephen A. Moynahan, Jr.
Deputy Clerk

**12.** *See supra* note 2.

attack on the correctness of the district court's pre-trial and directed verdict dismissals. The Willhaucks do this by their appeal from the trial court's denial of their Motion "for Entry of Judgment on Certain Issues and Parties." This motion, filed below on November 7, 1988, after the abortive appeal, referred specifically to the dismissal of all defendants and claims [13] disposed of prior to the lower court's order on the jury verdict in favor of Halpin and Perry.[14] The court on February 6, 1989, denied this motion, whereupon the Willhaucks moved on February 13 for reconsideration, which the court also promptly denied. The Willhaucks on March 3, 1989, filed Notice of Appeal to this Court, contesting the lower court's refusal to enter judgments.

### No Penalty for Dropping the Ball

■ We first dispose of any notion that the Willhaucks' decision to pursue the initial appeal to this Court, which we dismissed as premature, prejudices their main argument here. The defendants contend that the district court's dismissal orders were sufficient on account of the Willhaucks' inclusion of all defendants in their first appeal. They argue that the fact that the first appeal was one on the merits against all defendants proves that the Willhaucks were satisfied that the claims against all defendants had been finally adjudicated.

■ This asserted acquiescence with the abortive appeal must be rejected. Not only was the Willhaucks' initial appeal dismissed for lack of jurisdiction, it actually was never commenced because of a Notice of Appeal which was a complete nullity. The Supreme Court's decision in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982), is clear that a Notice of Appeal which is premature " 'simply self-destructs' " and should be treated as a nullity. *Id.* at 61, 103 S.Ct. at 403, 74 L.Ed.2d at 229 (*quoting* 9 Moore's Federal Practice

¶ 204.12[1] (1982)). Emphasizing F.R.A.P. 4(a)(4), the Court stated:

> Under the plain language of the current Rule, a premature notice of appeal "shall have no effect"; a new notice of appeal "must be filed." In short, *it is as if no notice of appeal was filed at all.*

*Id.* (emphasis added). Furthermore, while the Supreme Court has held that Rule 58's mechanical separate document requirement can be waived where both parties assent, *see Banker's Trust v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), the Court emphasized that the rule should always be interpreted "to prevent loss of the right to appeal, not to facilitate loss." *Id.* at 386, 98 S.Ct. at 1121, 55 L.Ed.2d at 386 (*quoting* 9 Moore's Federal Practice ¶ 110.08[2] (1970)). The appellees' argument rubs in the opposite direction.

The defendants' claims that the Willhaucks have forfeited the grounds of their present appeal are similar to those raised in *Alman v. Taunton Sportswear Mfg. Co.*, 857 F.2d 840 (1st Cir.1988). *Alman* was an appeal from a district court's refusal to grant a defendant's motion for entry of final judgment on the court's grant of summary judgment to the plaintiff. Originally the defendant filed a Notice of Appeal of the dismissal after the 30–day deadline, *see* F.R.A.P. 4(a)(1), pleading "inadvertence" in response to this Court's order to show cause why it should not be dismissed as untimely. The appellee unsuccessfully argued that the defendant thereby waived any finality argument, since he did not contest finality in the original appeal. We disagreed and stated: "appellant's initial error could not make a non-final disposition final. Appellant had no right of appeal to waive." *Alman*, 857 F.2d at 845. Likewise, the Willhaucks' claims in their present appeal are not precluded by their original error: they may not unwittingly waive the requirement of finality of judgments.

### The Rules and the Multi–Party Case

■ Finally we come to the main issue before us: whether there is a final judg-

---

**13.** *See supra* notes 4–10, and accompanying text.   **14.** *See supra* note 11.

ment as to the defendants previously dismissed;[15] in other words, whether the lower court has properly disposed of all parties and made all judgments final. The first subsidiary question we must ask is whether the court's pre-trial and directed verdict dismissals satisfy Rule 58's "separate document" requirement. If we find that Rule 58 is not satisfied, the Willhaucks' claims against all defendants except for Halpin and Perry remain open until finally disposed of by the district court in a separate document.[16]

◼ Pursuant to section 1291, this Court may only entertain appeals from final decisions.[17] The words "final decisions" in this statute incorporate the terms "final judgments" and "final decrees." 9 Moore's Federal Practice ¶ 110.08[1], pp. 43–44 (1990). Rule 58 states that a judgment is effectively final only when "set forth on a separate document" and "when entered as provided by Rule 79(a)." F.R.Civ.P. 58. Rule 79(a) directs the clerk to enter, *inter alia,* "all appearances, orders, verdicts, and judgments" in chronological order in the civil docket, taking care that the entries "show the nature of each paper filed or writ issued and the substance of each order or judgment of the court." F.R.Civ.P. 79(a). In order to be final and appealable, therefore, a judgment which ends the litigation must be entered on a separate document and properly entered in the civil docket.

◼ Finally, Rule 58 states that it is "[s]ubject to the provisions of Rule 54(b)," which provides that, in a suit involving multiple claims[18] or multiple parties such as the one before us, "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only* upon an *express* determination that there is no just reason for delay and upon an *express* direction for the entry of judgment." F.R.Civ.P. 54(b) (emphasis added).[19] Where the lower court does not designate an order as final under Rule 54(b), it has the power to modify, revise, or even reverse its decision at any time prior to making such a designation or properly closing the entire case.[20] Thus, in this type of suit, an order which disposes of one or more parties or claims but does not end the litigation must either be certified as final pursuant to Rule 54(b) or be disposed of with the remainder of the litigation at the conclusion of the entire case in compliance with Rule 58.

The Supreme Court and this Court have interpreted these rules fairly strictly. In *United States v. Indrelunas,* 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973), a unanimous Supreme Court held that a district court failed to meet the Rule 58 "separate document" mandate where its judgment was not recorded on a separate document. The Court stated that Rule 58 "must be mechanically applied to avoid new uncertainties as to the date on which a judgment is entered." *Id.* at 222, 93 S.Ct. at 1565, 36 L.Ed.2d at 207. Lacking a

---

**15.** *See supra* notes 4–10, and accompanying text.

**16.** The Willhaucks have not contended in their brief or at oral argument that the judgment on the jury verdict in favor of Halpin and Perry is in any way defective. We find that it satisfies the various formal requirements of Rules 58 and 79. *See supra* note 11.

**17.** 28 U.S.C. § 1291 states, in pertinent part:
The courts of appeals ... have jurisdiction of appeals from all final decisions of the district courts of the United States....

**18.** Multiplicity of claims in the context of a discussion of Rule 54(b) and 28 U.S.C. § 1291 finality almost always implies claims based on more than one set of facts giving rise to more than a single liability. "The mere happenstance that a plaintiff chooses ... to organize her complaint into separate 'counts' or 'statements of

claim'" does not deem it a multi-claim suit. *Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 44 n. 6 (1st Cir.1988). *See also, Hasbrouck v. Sheet Metal Workers Local 232,* 586 F.2d 691, 694 (9th Cir.1978); *Schexnaydre v. Travelers Ins. Co.,* 527 F.2d 855, 856 (5th Cir.1976) (per curiam); *Backus Plywood Corp. v. Commercial Decal,* 317 F.2d 339, 341 (2d Cir.), *cert. denied,* 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963). *See also,* Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2657 pp. 62–71 (1983).

**19.** As Professor Moore has aptly put it, "[t]he effect of Rule 54(b) ... is to postpone the entry of judgment until the court makes a determination that there is no just reason for delay, and orders the clerk to enter it." 9 Moore's Federal Practice ¶ 110.08[1], p. 44.

**20.** *Id.* at pp. 44–45.

proper final judgment, the Court determined that the time for appeal in the case had not begun to run. *Id.* Following the Supreme Court's lead, we pointed out in *Alman:* "even a decision that completely disposes of a case's merits can lack finality for the purposes of section 1291 *if it fails to comport with the technical dictates of Rules 58 and 79(a)* of the Federal Rules of Civil Procedure." *Id.* at 842 (*citing Indrelunas, supra* ) (emphasis added).[21]

The statutory requirement of finality as to form in order to end all claims as to all parties in the litigation applies no less rigidly in a case involving partial pre-trial and directed verdict orders such as those the lower court entered here. The district court did not certify any of these actions for immediate review pursuant to Rule 54(b). The lower court's relaxed application of the rules of judgment is of no consequence, therefore, irrespective of the facts that the 14 dismissals consisted most commonly of handwritten notations in the margins of the moving defendants' pleadings,[22] and that the clerk's docket entries ranged from notations which were adequate to alert the reader to the substance of the disposition to vague comments devoid of any substance or even the names of the parties dismissed.[23] Even strict adherence to the rules would not change the non-final, unappealable nature of these orders.

Lacking Rule 54(b) certification of the dismissals, the focus shifts to the point at which the entire litigation concluded. The court's entry of judgment on the jury verdict, which the defendants contend ended the litigation, named only defendants Halpin and Perry.[24] In it the court failed to mention or make reference to any judgment being conferred on the 14 other parties dismissed during the pendency of the lawsuit. The court neither entered final judgment in these defendants' favor on a separate document nor directed the clerk to enter final judgment in their favor in the docket. *See* F.R.Civ.P. 58, 79.

In a multiple party, multiple claim case such as the instant one, form of judgment defects are not formal only. By their very nature, because they are open and subject to revision by the court, the orders in favor of the 14 dismissed defendants are *not final for purposes of appeal* and consequently do not satisfy section 1291:

> The effect [of section 1291] is to disallow appeal from any decision which is tentative, *informal* or incomplete.... So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal.

*Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528, 1536 (1949) (emphasis added). We therefore conclude that, because of the court's failure to comply with the mandates of Rules 54(b), 58, or 79, the time for appeal of the dismissal orders for the defendants not before the jury or part of its verdict has not yet begun to run. This period accrues only upon the court's compliance with the rules on the date of the entry of judgment. Accordingly, we vacate the court's order of denial of the Willhaucks' motion to render an appropriate final judgment and remand. On remand, the lower court must consider whether it desires to change any of the previously entered interlocutory orders. After making its desired changes, if any,[25] it is directed to enter final judgments disposing of the entire litigation in accordance with the Federal Rules of Civil Procedure.

### Prospective Effect

Having found that Rules 54, 58, and 79 must be applied mechanically and that judgments in multiple party, multiple claim

---

21. *See also, In re Smith Corset Shops,* 696 F.2d 971, 975 (1st Cir.1982) (stating that "a court's failure to comply with [Rule 58's] requirements ordinarily disables an appellate court from reviewing the case); *Scola v. Boat Frances, R., Inc.,* 618 F.2d 147, 151 (1st Cir.1980) (same).

22. *See supra* notes 4–10, and accompanying text.

23. *See, e.g., supra* notes 9–10.

24. *See supra* note 11.

25. We speak of possible changes only to reinforce our basic point that a judgment is not "final" until it is entered. We have no particular reason to think that the court would wish to change any of its earlier orders.

cases not in accordance with these rules are not final for purposes of appeal, we should consider whether to give this decision prospective effect only. We look at three factors in making this determination: first, whether the decision establishes new law; second, "whether retrospective operation will further or retard [the] operation" of the holding in question; and third, whether the decision "could produce substantial inequitable results if applied retroactively...." *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971).

 With regard to the first criterion, we find that our holding establishes new law "deciding an issue of first impression whose resolution was not clearly foreshadowed." *Id.* This circuit has never before interpreted the formal finality requirements in a multiple party action with all its complexities. The district court's apparent lack of familiarity with the application of the rules in the multi-party, multi-claim context evidences the novelty of our holding. We may certainly say, therefore, that it was not "clearly foreshadowed."

The second criterion weighs in favor of giving our holding prospective-only status, since retroactivity does nothing to further our holding's "prospective vitality." *See Aufiero v. Clarke,* 639 F.2d 49, 51 (1st Cir.1981). The final factor is satisfied in view of the hardships retroactive application of this holding would impose on the entire federal judiciary, trial and appellate, within the First Circuit, as well as the countless former litigants in the probable hundreds of multi-party, multi-claim cases long thought to be ended. As support for our finding that this third factor is present here, we recognize the concerns expressed at oral argument that the problem before us is not an uncommon one. Certainly the court system would come under an enormous burden if multi-party, multi-claim cases as ancient as the rules of civil procedure themselves are resurrected and challenged on account of this decision, long after the litigants involved have accepted their dispositions as final. Indeed, the potential consequences are overwhelming, and, coupled with the presence of the other factors, are sufficient to require prospective-only application of this decision.[26]

Thus we conclude that the prospective application of this decision begins on its effective date.[27] Only parties with appeals on the merits pending before this court (and, of course, the parties to this appeal), or those parties whose time of appeal has not yet expired, may gain the benefit of our holding here.

VACATED AND REMANDED.

---

**26.** *See American Trucking Ass'ns v. Smith,* 495 U.S. ——, ——, 110 S.Ct. 2323, 2334, 110 L.Ed.2d 148, 164 (1990), which held that a court may consider disruption of governmental functions in determining whether retroactive application of its decision will impose impermissible hardships.

**27.** *See id.* at ——, 110 S.Ct. at 2335, 110 L.Ed.2d at 165, and cases cited therein.