USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1878 GEORGE E. KERSEY, Plaintiff, Appellant, v. DENNISON MANUFACTURING COMPANY, ET AL., Defendants, Appellees. ____________________ No. 92-1932 GEORGE E. KERSEY, Plaintiff, Appellant, v. DENNISON MANUFACTURING COMPANY, ET AL., Defendants, Appellees. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Torruella, Cyr and Boudin, Circuit Judges. ______________ ____________________ George E. Kersey, pro se, for appellant. ________________ ___ __ Alan D. Rose with whom James N. Boudreau, Marilee Denelle, and _____________ _________________ _______________ Nutter, McClennen & Fish were on brief for appellees. ________________________ ____________________ August 24, 1993 ____________________ CYR, Circuit Judge. Appellant George E. Kersey chal- CYR, Circuit Judge. _____________ lenges a partial summary judgment, certified pursuant to Fed. R. Civ. P. 54(b), dismissing various claims against Dennison Manu- facturing Co., Inc. ("Dennison") and four of its officers ("the individual defendants") for breach of contract, age discrimina- tion, defamation, invasion of privacy, and interference with contractual relations. We dismiss the appeal for lack of appel- late jurisdiction. I I BACKGROUND BACKGROUND __________ Appellant Kersey, a patent attorney, performed legal services for Dennison from 1966 to 1989. The defendants contend that Kersey acted as retained counsel, or as an independent legal consultant, providing advice to Dennison on patent matters. Kersey depicts himself as the de facto "manager" of the patent __ _____ department, and a Dennison "employee." Whatever their legal relationship, Kersey parted company with Dennison in 1989 under less than amicable circumstances.1 ____________________ 1The lawsuit arose out of Dennison's decision to reorganize its patent department. In 1988, Dennison's general counsel asked Arthur B. Moore, a former "patent attorney trainee" who was appointed Dennison's chief patent counsel, to prepare a "white paper" critiquing the organization and efficiency of the patent department during Kersey's tenure. Preliminary and final drafts of the Moore report contained criticism of Kersey's past perfor- mance, which Kersey considered defamatory. In January 1989, Dennison sent written notice to Kersey, offering to retain his 3 In September 1989, Kersey brought the present lawsuit against Dennison for breach of an employment contract (Count 1), quantum meruit (Count 7), and refusal to pay for services (Count 8); against Dennison and the individual defendants for age discrimination (Counts 2 and 3), defamation (Count 4), and invasion of privacy (Count 5); and against the individual defen- dants for intentional interference with advantageous contractual relations (Count 6). Dennison counterclaimed, alleging that Kersey committed eight acts of legal malpractice while acting as Dennison's attorney between 1973 and 1988. Kersey interposed eleven "cross-claims"2 against Dennison and the individual defendants, alleging malicious and retaliatory prosecution of the malpractice counterclaims, as well as malicious interference with Kersey's future employment prospects. On March 5, 1992, the district court granted summary judgment for defendants on Counts 1-6 of the complaint, leaving Counts 7 and 8 for later adjudication. The court denied Kersey's motion for summary judgment on Dennison's malpractice counter- claims. In June 1992, after Kersey's eleven "cross-claims" were dismissed for failure to prosecute, see Fed. R. Civ. P. 41(b), ___ ____________________ services at an increased hourly rate on the condition that he decrease his billable hours. Kersey contends, and Dennison denies, that this constituted a constructive "termination" of Kersey's employment. 2Kersey incorrectly designated his eleven counterclaims as "cross-claims"; technically speaking, a cross-claim can be interposed only against co-parties. We nonetheless use Kersey's designation for ease of reference; namely, to distinquish his counterclaims from Dennison's malpractice counterclaims. 4 the district court certified defendants' partial summary judgment pursuant to Fed. R. Civ. P. 54(b),3 denied Kersey's ensuing postjudgment motions for reconsideration, and stayed further trial court proceedings pending appeal. II II DISCUSSION DISCUSSION __________ Kersey's appeal founders on two jurisdictional defects, one advanced by the defendants, the other by Kersey; either defect warrants dismissal of the present appeal. Nonetheless, we address both jurisdictional challenges, since any future appeal ______ by Kersey from the adverse partial summary judgment would be ____________________ 3Civil Rule 54(b) provides: When more than one claim for relief is pre- sented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there was no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order ___ _____ or other form of decision, however designat- ed, which adjudicates fewer than all the _____ ___________ _____ ____ ___ ___ claims or the rights and liabilities of fewer ______ than all the parties shall not terminate the _____ ___ _________ ___ action as to any of the claims or parties, ______ __ __ ___ __ ___ ______ __ _______ and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Fed. R. Civ. P. 54(b) (emphasis added). 5 foreclosed were defendants' present jurisdictional challenge to prevail. A. Notices of Appeal A. Notices of Appeal _________________ Defendants insist that Kersey's appeal, and with it his challenge to the Rule 54(b) certification, is precluded by Fed. R. App. P. 4(a)(4), which provides: If a timely motion . . . is filed in the district court by any party . . . under Rule 59 to alter or amend the judgment . . . the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. A notice of appeal filed before the _ ______ __ ______ _____ ______ ___ disposition of any of the above motions shall ___________ __ ___ __ ___ _____ _______ _____ have no effect. A new notice of appeal must ____ __ ______ _ ___ ______ __ ______ ____ be filed within the prescribed time measured __ _____ from the entry of the order disposing of the motion as provided above. Fed. R. App. P. 4(a)(4) (emphasis added).4 We agree. Kersey's first motion for reconsideration was filed on July 13, 1992. See Rodriguez v. Banco Central, 790 F.2d 172, 176 ___ _________ _____________ (1st Cir. 1986) (for purposes of FRAP 4(a)(4), motion for recon- sideration may be considered a motion to alter and amend). His notices of appeal filed on July 13 and July 22 both preced- ed the district court's August 5 order denying his motions for ____________________ 4Appellate Rule 4(a)(4), which has been described as a "trap for the unwary," Averhart v. Arrendondo, 773 F.2d 919, 920 (7th ________ __________ Cir. 1985), was intended to prevent a would-be appellant from spinning "wheels" in the court of appeals while the trial court's "wheels" remain in motion, lest the trial court's reexamination of its own ruling moot a ripened appeal, or the appellate court be deprived of the benefit of the district court's reassessment or narrowing of the issues to be confronted on appeal. See ___ McCowan v. Sears, Roebuck & Co., 908 F.2d 1099, 1103 (2d Cir.), _______ _____________________ cert. denied, 498 U.S. 897 (1990). _____ ______ 6 reconsideration. Accordingly, both notices of appeal were ineffectual under Fed. R. App. P. 4(a). See Griggs v. Provident ___ ______ _________ Consumer Discount Co., 459 U.S. 56, 61 (1982) (holding that a _____________________ notice of appeal filed prior to the disposition of a Rule 59(e) motion is "nullified"); Willhauck v. Halpin, 919 F.2d 788, 792 _________ ______ (1st Cir. 1990) (absent compliance with FRAP 4(a)(4), premature notice of appeal "simply self-destructs") (citations omitted); see also Wagoner v. Wagoner, 938 F.2d 1120, 1121 (10th Cir. 1991) ___ ____ _______ _______ (dismissing appeal from summary judgment certified pursuant to Rule 54(b), due to failure to replace premature notice of appeal per FRAP 4(a)(4)).5 The defendants further insist that Kersey's unwitting failure to replace the premature notice of appeal, as required by Fed. R. App P. 4(a)(4), has cost him not only the battle but the war, since the Rule 54(b)-certified judgment became final and nonappealable thirty days from August 5, 1992, when the district court denied his Rule 59(e) motions. See Willhauck, 919 F.2d at ___ _________ 792 ("In short, it is as if no notice of appeal was filed at all."). Fortunately for Kersey, two jurisdictional facts defeat defendants' argument. First, the Rule 54(b)-certified judgment of June 24, 1992 was never entered on the district court docket in accordance with Fed. R. Civ. P. 58 and 79(a). See Willhauck v. Halpin, 953 ___ _________ ______ F.2d 689, 701 (1st Cir. 1991) (holding that the certifying "court ____________________ 5Fed. R. App. P. 2 does not empower a court of appeals to give effect to a premature notice of appeal under Fed. R. App. P. 4(a)(4). See Griggs, 459 U.S. at 60. ___ ______ 7 must make an 'express direction for the entry of judgment' in conformity with Fed. R. Civ. P. 58 and 79(a)"). Second, notwith- standing the fact that the district court "announced" its denial of Kersey's Rule 59(e) motions in the August 5 margin order, see ___ Acosta v. Louisiana Dep't of Health and Human Resources, 478 U.S. ______ _____________________________________________ 251, 253-54 (1986) (rejecting view that Rule 59 motion is "dis- posed of," for FRAP 4(a)(4) purposes, at the time the district court "announces" its denial of the motion rather than upon formal entry of the order of denial), the margin order was never transposed to a separate document, as mandated by Rule 58. See ___ Fed. R. App. P. 4(a)(7) ("A judgment or order is entered within the meaning of this Rule 4(a) when it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Proce- dure."); Fiore v. Washington County Community Mental Health Ctr., _____ ______________________________________________ 960 F.2d 229, 233 (1st Cir. 1992) (en banc) (postjudgment motions are subject to "separate document" rule). Accordingly, the time periods within which an appeal could be taken from the June 24 certified judgment, and from the August 5 margin order denying the Rule 59(e) postjudgment motions,6 have never commenced. See Bankers Trust Co. v. ___ ___________________ Mallis, 435 U.S. 381, 386 (1978) (per curiam) (noting that the ______ "separate document" rule should always be invoked "to prevent loss of the right of appeal, not to facilitate loss [of that ____________________ 6See Fiore, 960 F.2d at 232-33 (noting that, in the First ___ _____ Circuit, "denials of . . . post-judgment motions challenging the judgment are appealable separately from the appeal of the under- __________ lying judgment") (emphasis added). 8 right]"); Fiore, 960 F.2d at 235. Thus, were we to order a pro _____ ___ forma remand, Kersey could attempt to persuade the district court _____ to reconsider its Rule 54(b) certification or the underlying summary judgment, see Fed. R. Civ. P. 54(b) ("the order or . . . ___ decision is subject to revision at any time . . . ."); failing that, he could file a timely notice of appeal as soon as the extant orders were entered on the docket. One course of action in these circumstances would be simply to dismiss the appeal and proceed no further.7 But since ____________________ 7FRAP 4(a)(4) applies only to a "timely" motion under Civil Rule 59(e), which requires that a motion to alter or amend "shall be served not later than 10 days after entry of judgment." Had the certified judgment been entered in compliance with Rule 58 on June 24, Kersey's Rule 59(e) motions would have been "untimely," see Feinstein v. Moses, 951 F.2d 16, 19 (1st Cir. 1991) (Rule ___ _________ _____ 59's ten-day deadline is "mandatory," and the district court has no discretion to waive deadline), since Kersey apparently did not serve them on defendants until July 13, 1992, more than ten days _____ after the presumed date of entry of the judgment. Kersey's two notices of appeal would have remained intact. See Boston Car Co. ___ ______________ v. Acura Auto. Div., 971 F.2d 811, 814-15 (1st Cir. 1992) (an _________________ untimely Rule 59 motion should not trigger "nullification" ________ effects of FRAP 4(a)(4)); Britt v. Whitmire, 956 F.2d 509, 515 _____ ________ (5th Cir. 1992) (same). The delay in entering the Rule 54(b)-certified judgment and the order denying the Rule 59(e) motions regenerates a FRAP 4(a)(4) problem. Because the June 24 judgment has not yet entered, Kersey's Rule 59(e) motions, though decidedly premature, were not "untimely" under Rule 59(e) that is, they were not served later than 10 days after entry of judgment. See 11 _____ _____ __ ________ ___ Charles Wright & Arthur Miller, Federal Practice and Procedure ______________________________ 2812, at 81-82, 81 n.44 (1973 & Supp. 1993) (Rule 59(e) sets only an outer-limit deadline, so that an early motion for reconsidera- tion can still be characterized as a valid Rule 59(e) motion, even if filed before formal entry of judgment). Moreover, FRAP ______ 4(a)(2), which normally gives reach-back effect to premature notices of appeal filed between the announcement of a decision and the entry of judgment, is expressly made inapplicable as a cure for FRAP 4(a)(4) defects. See Fed. R. App. P. 4(a)(2) ___ ("Except as otherwise provided in (a)(4) of this Rule 4 . . . ."- ); Acosta, 478 U.S. at 253-54. ______ 9 a pro forma remand, followed by a new notice of appeal, would ___ _____ advance neither the interests of the parties nor sound judicial administration, we address the other jurisdictional flaw infect- ing Kersey's appeal. See Fiore, 960 F.2d at 235 (noting that ___ _____ strict adherence to policy of remanding for correction of FRAP 4(a)(4) defect would compel parties to go through the motions by refiling a timely notice of appeal on remand, but that "[c]ausing wheels to spin for no practical purpose is . . . contrary to the Supreme Court's handling of Rule 58.") (citing Bankers Trust, 435 _____________ U.S. at 385). B. Rule 54(b) Certification B. Rule 54(b) Certification ________________________ We lack appellate jurisdiction to review the partial summary judgment absent a proper Rule 54(b) certification. See ___ Pahlavi v. Palandjian, 744 F.2d 902, 903 n.2 (1st Cir. 1984) _______ __________ (citing Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956)- ____________________ ______ ). Even were we to assume arguendo that the dismissed claims ________ (Counts 1-6) in the present case qualified as "final," see ___ Consolidated Rail Corp. v. Fore River Ry. Co., 861 F.2d 322, 325 _______________________ __________________ (1st Cir. 1988), the Rule 54(b) certification would falter on the "interrelationship" prong of the discretionary test set out in Spiegel v. Trustees of Tufts College, 843 F.2d 38, 44 (1st Cir. _______ __________________________ ____________________ On the other hand, Griggs and Acosta offer only limited ______ ______ jurisdictional guidance, since appellants in those cases could no longer file replacement notices of appeal because final judgments had entered during their appeals and the time for filing an effectual notice of appeal had long since elapsed. Accordingly, despite the technical requirements of FRAP 4(a)(4), we are left to fashion a course best suited to the interests of the parties and the interests of judicial economy. 10 1988). The Spiegel test requires the court of appeals to scruti- _______ nize (1) the district court's evaluation of any interrelationship or overlap between the legal and factual issues raised by the dismissed and pending claims, and (2) the district court's assessment of the equities for and against an immediate appeal. In cases where the district court has provided a written state- ment of the grounds for certification, we normally accord its discretionary decision "substantial deference," id., and will ___ dismiss for lack of appellate jurisdiction only if the court's certification was "clearly unreasonable." Curtiss-Wright Corp. _____________________ v. General Elec. Co., 446 U.S. 1, 10 (1980). _________________ In conjunction with the district court's Rule 54(b) certification, Kersey's "cross-claims" were dismissed for lack of prosecution. The court based the dismissal on defendants' allegation that Kersey neither conducted discovery on the "cross- claims" nor complied with the pretrial order requiring that each claim he intended to pursue at trial be specified in his "trial document." Nevertheless, the record flatly contradicts defen- dants' allegation that Kersey failed to identify the dismissed "cross-claims" in his February 5, 1992 "trial document."8 ____________________ 8In A-8 of the "trial document," Kersey fully described his "cross-claims" for "malicious abuse of civil process," alleging that Dennison's eight counterclaims were brought in "bad faith," and that Kersey had been "damaged in his ability to obtain future legal and/or patent work." This language precisely mirrors Kersey's dismissed "cross-claims," which alleged that Dennison and the individual defendants asserted unfounded mal- practice claims in retaliation for his lawsuit against them, and to harm Kersey's future employment prospects. Kersey even listed as a proposed trial exhibit a January 25, 1990 letter in ________ _____ _______ which opposing counsel made the alleged threat to prosecute the 11 Involuntary dismissal of a claim pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute is reviewable only for "abuse of discretion." See HMG Property Investors, Inc. v. ___ ______________________________ Parque Indus. Rio Canas, Inc., 847 F.2d 908, 916 (1st Cir. 1988). _____________________________ Nonetheless, since dismissal is among the harsher sanctions and contravenes the longstanding policy favoring dispositions on the merits, it must be cautiously invoked. See Velazquez-Rivera v. ___ ________________ Sea-Land Serv., Inc., 920 F.2d 1072, 1075 (1st Cir. 1990); ______________________ Figueroa-Ruiz v. Alegria, 896 F.2d 645, 647 (1st Cir. 1990). As _____________ _______ the central allegation underpinning the Rule 41(b) dismissal order in this case was unfounded,9 the dismissals cannot stand and, consequently, the district court's Rule 54(b) certification is undermined. See Serrano-Perez v. FMC Corp., 985 F.2d 625, 628 ___ _____________ _________ (1st Cir. 1993) ("abuse of discretion" occurs "when a relevant ____ _ ________ factor deserving of significant weight is overlooked, or when an ______ _________ __ ___________ ______ __ __________ __ ____ __ improper factor is accorded significant weight, or when the court ________ ______ __ ________ ___________ ______ considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales.") (empha- sis added).10 ____________________ retaliatory counterclaims. 9Without more, a mere failure to conduct discovery would not signal abandonment of these "cross-claims," not only because of their inherent nature, but in light of Kersey's stated intention to try the "cross-claims." See supra note 8. ___ _____ 10The record indicates that defendants never mentioned Kersey's "cross-claims" in their initial motion for Rule 54(b) certification, which the district court endorsed on June 11, 1992. Not until Kersey brought this omission to the district court's attention did defendants include a "dismissal" clause in the proposed form of judgment signed by the court on June 24. 12 In its critical role as the Rule 54(b) "dispatcher," Curtiss-Wright, 446 U.S. at 8, the district court is to consider ______________ the strong judicial policy disfavoring piecemeal appellate review, see Spiegel, 843 F.2d at 42; Pahlavi, 744 F.2d at 903, by ___ _______ _______ carefully comparing the dismissed and the unadjudicated claims for indications of substantial overlap to ensure that the appellate court is not confronted in successive appeals with common issues of law or fact, to the detriment of judicial efficiency. In the present case, exhumation of Kersey's "cross- claims" effectively reinstates the dispute between Kersey and the individual defendants. Rule 54(b) certification is particularly __________ __________ suspect "'when the contestants on appeal remain, simultaneously, contestants below.'" Consolidated Rail, 861 F.2d at 326 (quoting _________________ Spiegel, 843 F.2d at 44); Shrader v. Granninger, 870 F.2d 874, _______ _______ __________ 878 (2d Cir. 1989). Count 4 of the complaint alleges that the defendants published or adopted defamatory statements about Kersey's perfor- mance of legal services for Dennison; one such statement de- scribes Kersey's "unfortunate habit of procrastination in patent prosecution." Several malpractice counterclaims (e.g., Counts 2, ____ 3, 7) also involve allegations that Kersey mismanaged Dennison's ____________________ Appellees argue, nevertheless, that the Rule 54(b) certification was proper even if the Rule 41(b) dismissals were improvident, on the ground that the dismissed claims all involved events occur- ring before Kersey's alleged discharge, while the dismissed ______ "cross-claims" involved Dennison's alleged retaliatory decision to institute its counterclaims after Kersey brought the present _____ lawsuit. As pointed out below, however, defendants' contention is untenable. See infra at pp. 13-15. ___ _____ 13 patent prosecutions and appeals during the period from 1973 to 1988.11 In his "cross-claims," Kersey counters that Dennison's malpractice counterclaims lacked a "basis in fact" and were brought in "bad faith," presumably either as post hoc justifica- __________ ____ ___ tions for terminating Kersey, or to coerce settlement of the present lawsuit by impugning "his personal and professional reputation." See, e.g., Beecy v. Pucciarelli, 387 Mass. 589, ___ ____ _____ ___________ 593, 441 N.E.2d 1035, 1038 (1982) ("malicious prosecution" claimant must demonstrate damages resulting from defendant's prosecution, "with malice and without probable cause," and that defendant's action was resolved in claimant's favor). On appeal, the defendants urge that their "procras- tination" allegation against Kersey must be considered privileged because it was made in furtherance of Dennison's legitimate business requirements. Defendants concede, nonetheless, that the privilege would be rendered inoperative under Massachusetts law were Kersey to show that defendants recklessly or maliciously __________ ___________ published the allegation. See Bratt v. IBM Corp., 392 Mass. 508, ___ _____ _________ 513, 467 N.E.2d 126, 131 (1984). Thus, defendants' bad faith, reckless disregard, and/or malice, form core allegations compris- ing the dismissed defamation claim and the "cross-claims" for malicious prosecution, all of which allege reputational harm. These factual issues may well turn on the truth or falsity of the ____________________ 11For example, Dennison's second counterclaim alleges that it lost a 1988 patent case when a federal district court denied Kersey's "belated[]" motion to file proposed findings of fact, since "the [filing] deadline had long since passed." 14 malpractice charges, the timing and extent of defendants' knowl- edge of the facts underlying their malpractice charges, and any evidence of ill motive. These factual determinations bid fair to form the essential focus of successive appeals, one in connection with the dismissed defamation claim, and another relating to the "cross-claims" for malicious prosecution. See Spiegel, 843 F.2d ___ _______ at 45 (dismissing appeal from order certified under Rule 54(b) where "[t]he factual underpinnings of the adjudicated and unadju- dicated counts are . . . inextricably intertwined"); Pahlavi, 744 _______ F.2d at 904 (noting factual overlap between claims and counter- claims, presenting "a conflict which seems destined to reappear" in a succeeding appeal); see also Hogan v. Consolidated Rail ___ ____ _____ _________________ Corp., 961 F.2d 1021, 1026 (2d Cir. 1992) (abjuring, as contrary _____ to sound judicial administration, "piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case, instead of having the trial judge, who sits alone and is intimately familiar with the whole case, revisit a portion of the case if he or she has erred in part"). So substantial a prospect of contextual overlap between dismissed claims and unadjudicated claims counsels strongly against Rule 54(b) certif- ication. See Continental Airlines, Inc. v. Goodyear Tire and ___ ___________________________ __________________ Rubber Co., 819 F.2d 1519, 1525 (9th Cir. 1987) (factual overlap ___________ entails risk that Rule 54(b)-certified judgment may have unex- pected res judicata effect on unadjudicated claims yet pending ___ ________ before trial court). 15 In these circumstances, given the interlocking factual issues common to the improvidently dismissed "cross-claims" and the dismissed defamation claim, the Rule 54(b) certification was improper, especially since there is no compelling evidence that the equities favor early appellate review of the certified judgment. See Spiegel, 843 F.2d at 45 ("Where, as here, the dis- ___ _______ missed and surviving claims are interlocking, only 'unusual and _______ compelling circumstances . . . [can] dictate[] entry of an early __________ separate judgment' on the dismissed part of the case.") (emphasis added) (citation omitted). Aside from noting the unrelatedness of the dismissed and unadjudicated claims, the district court determination that there was "no just reason for delay" was based primarily on the ground that immediate appeal of the partial summary judgment might avoid two separate trials should the partial summary judgment later be vacated and remanded for new trial. As noted, however, such a potential is rarely, if ever, a self-sufficient basis for a Rule 54(b) certification, because "[v]irtually any interlocutory appeal from a dispositive ruling said to be erroneous contains the potential for requiring a retrial." Id. ___ The appeal is dismissed for lack of jurisdiction. The ________________________________________________ ___ case is remanded to the district court for further proceedings _________________________________________________________________ consistent with this opinion; no costs. ______________________________________ 16